# CHARLESTON

THE RUHL-KOBLEGARD COMPANY *v.* GILLESPIE *et al.*

Submitted February 13, 1907.    Decided March 19, 1907.

1. BANKRUPTCY—*Discharge—Effect.*

   A discharge in bankruptcy releases the bankrupt from all debts and claims which are made provable against his estate and which existed on the day the petition was filed, except such debts as are by the Bankruptcy Act, 1898, excepted from a discharge in bankruptcy. (p. 585.)

2. SAME—*Fraudulent Conveyance—Action to Set Aside.*

   A creditor of one discharged in bankruptcy cannot maintain a suit to set aside an alleged fraudulent transfer of the property of the bankrupt, although such transfer may have been made more than four months prior to the filing of the petition in bankruptcy. The right to sue for and subject to the payment of the bankrupt's debts such property, is vested alone in the trustee, and the failure of the trustee to bring such suit within the time prescribed by law does not transfer the right to do so to the creditor. (p. 587.)

Appeal from Circuit Court, Webster County.

Bill of the Ruhl-Koblegard Company against J. M. Gillispie and others.    Decree for defendants, and plaintiff appeals.

*Affirmed.*

C. C. HIGGINBOTHAM, EDWARD A. BRANNON, and J. M. HOOVER, for appellants.

MORTON & WOODDELL, and MOLLOHAN, McCLINTIC & MATHEWS, for appellees.

SANDERS, PRESIDENT:

The Ruhl-Koblegard Company complains of a decree of the circuit court of Webster county dismissing its bill filed for the purpose of setting aside two alleged fraudulent conveyances of lots of land situate in the town of Addison, to Maggie E. Gillespie, the wife of James M. Gillespie, and seeking to subject the same to the payment of a debt claimed to be due to it from the last named defendant.    The record of the cause discloses that by two certain deeds dated the 18th day of August, 1894, and the 16th day of October, 1897, re-

spectively, for certain considerations therein named, Benjamin Hamrick and his wife conveyed to the female defendant two lots of land situate in the town of Webster Springs. That the defendant, James M. Gillespie, was a merchant, and as such opened an account in his own name with the plaintiff in 1896, which ran along with debits and credits until the 17th day of December, 1898, when a balance of six hundred and sixty-eight dollars and seventy-five cents was found due the plaintiff, and which remains unpaid. That en the 12th day of February, 1901, the defendant, James M. Gillespie, filed his petition in voluntary bankruptcy in the District Court of the United States for the Northern District of West Virginia, and such proceedings were had therein that on the 22nd day of October, 1901, he was discharged from all his debts and claims provable by the Bankruptcy Act, including the plaintiff's debt. The lots here sought to be subjected to sale were not given in by the bankrupt in said bankruptcy proceeding, and this suit was instituted on the 16th day of December, 1902. The defendants demurred to and answered the bill, denying all allegations of fraud, and denying that the lots were purchased and paid for by the defendant, James M. Gillespie, or that they belonged to him, and as an additional defense the defendant James M. Gillespie pleaded his discharge in bankruptcy.

There are several reasons advanced by the appellees in support of the decree of the circuit court, but the main questions arising are, whether or not the discharge in bankruptcy of the defendant, James M. Gillespie, is a bar to the plaintiff's claim, and whether not after the adjudication in bankruptcy only a trustee appointed therein could maintain a suit to set aside fraudulent conveyances.

The determination of both of these questions depends entirely upon the construction of the Bankruptcy Act of 1898. By section 17 of that Act it is provided that a discharge in bankruptcy shall release a bankrupt from all his *provable debts*, except a certain specified class. Therefore, there are only two inquiries to make, first, is the plaintiff's debt a provable one in bankruptcy, and, second, is such debt included in the specified exceptions? There certainly can be no question,

and in fact it is not otherwise contended but that it is a provable debt, and it is equally as plain and undeniable that it is not embraced within either of the exceptions.    Loveland on Bankruptcy, sections 109-289.    When this conclusion is reached, there seems to be nothing left upon which the plaintiff can predicate its suit.    "A discharge in bankruptcy discharges the bankrupt from all debts and claims, which are made provable against his estate, and which existed on the day the petition was filed, excepting such debts as are by law excepted from the operation of a discharge in bankruptcy."    Loveland on Bankruptcy, section 288.    The plaintiff's claim being a provable simple contract debt, and not falling within either of the exceptions, it is perfectly patent, under the plain letter of the act, that the discharge clearly operates as a complete release thereof.    It is difficult indeed to conceive how a debt completely released and discharged, can form the basis of a suit.    There can be no personal decree against James M. Gillespie, and there is no specific lien upon the property sought to be charged.    As to when a lien against a bankrupt will be discharged is not presented by the record, and will not be dealt with.    "The effect of a discharge is to release the personal liability only. It does not effect liens upon his property.    If they are valid, under the laws of the State and the bankrupt act, they may be enforced after a discharge is granted.    Thus a judgment which has become a lien on property will continue to be so but if the judgment is merely a personal liability it is released by a discharge.    In an action to enforce a mechanic's lien or mortgage the discharge will not bar the proceedings except as to a personal judgment for a deficiency.    A vendor's lien for the purchase price of property sold may be enforced after a discharge, provided such lien is recognized by the State laws."    Loveland on Bankruptcy, section 285.

And again, the right of the creditor to prosecute this suit is challenged, it being contended that such right is vested solely in the trustee.    At the outset it may be well to remark that it is urged by the appellant that no trustee was elected,    Whether this is so or not we cannot determine, because certain orders of the bankruptcy proceeding, copied into the record, by which it is claimed this fact appears,

upon examination are found to form no part thereof. We assume such trustee was appointed, but however this may be, we deem it immaterial, because under section 44 of the Bankruptcy Act the creditors of the bankrupt's estate are required at their first meeting after the adjudication or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, to appoint a trustee or trustees of such estate, and if they should fail to do so, then it becomes the duty of the court to make such appointment. Under section 47 of the same Act, the duties of the trustee are prescribed, and among them it is made his duty to collect and reduce to money the property of the estate for which he is trustee under the direction of the court, and to close up the estate as expeditiously as is compatible with the interests of the parties in interest.

These lots, as will be observed, were conveyed to the female defendant prior to the passage of the Bankruptcy Act, and several years before the filing of the petition in bankruptcy. The plaintiff's claim was presented and proved in the bankruptcy proceeding, and it became the duty of the trustee, if these lots in controversy were the property of the bankrupt, to bring and prosecute such proceedings as were necessary to subject them to the payment of his debts, and if the trustee failed to do this, the plaintiff had the right to and it was its duty, if it desired to subject this property to the payment of its debt, to apply to the court for relief in this respect. "The negligence or refusal of a trustee to bring a suit to set aside such a conveyance is not sufficient to enable a creditor to maintain a suit in his own name." Loveland on Bankruptcy, section 158.

It is contended by counsel for the appellant that section 67*e* of the Bankruptcy Act of 1898 vests in trustees in bankruptcy the right to bring suits to attack fraudulent conveyances only when such conveyances are made within four months prior to the filing of the petition in bankruptcy. "All property transferred by the bankrupt in fraud of his creditors vests in the trustee. There is no four months' limitation on this class of transfers." Loveland on Bankruptcy, section 158. The limitation period of four months fixed by section 67*e* was not intended to cover

and does not apply to such transfers as would have been fraudulent at common law, by statute or by any other recognized rule of law other than the special provisions of the bankrupt statute. In connection with that section we should consider section 70*e* of the same act, which provides that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred or its value from the person to whom it is transferred, unless it was a *bona fide* holder for value, prior to the date of the adjudication. We are forced to the conclusion that the right of the trustee to prosecute this suit was not limited to conveyances or transfers within four months previous to the filing of the petition, but that it would be his duty to attack all such conveyances antedating that period as well. In fact, by the Bankruptcy Act the trustee was vested with the sole power to do so. In the case of *in re Wm. II. Gray*, 3 Am. Bank. Rep. 647, this identical question came before the Appellate Division of the Supreme Court of New York, wherein it was decided that section 70*e* of the Bankruptcy Act conferred the right to set aside fraudulent conveyances of property made prior to the four months' period upon the trustee, pursuant to pre-existing rights of creditors. The second point of the syllabus in that case is: "Section 67*e* embraces all acts within the four months which are voidable as matters of fact or of law, and the trustee's right to have transfers annulled thereunder is conferred upon him by the due operation of the Bankruptcy Law, and is irrespective of whether any person might or might not have had that right, except for that law. But when, under 70*e*, the trustee seeks to set aside a fraudulent or voidable transfer of the bankrupt antedating the four months, he does so in the creditor's common-law right, to which he is subrogated, and which is vested in him exclusively." The opinion of the court, in that cause, elaborates the syllabus, and says: "The rights of action in question follow the supersession, and go to the trustee with the rest of the estate, and thereafter he is exclusively vested therewith for the purposes of the act. Nor was it intended to leave voidable transfers antedating the four months to the operation of ordinary creditors' bills. No individual creditor is permitted, by the Bankruptcy Act, to pro-

ceed upon his judgment against the bankrupt.  Should he attempt to file a creditors's bill therein, he would at once be stayed by the Bankruptcy Court.  Section 70*e*, therefore, means what we have indicated, or else the Bankruptcy Act operates as a legislative device to permit fraudulent transfers to take effect with impunity in case they are effectually concealed for the specified four months.  And this, certainly, cannot be inferred.  We think, therefore, that the trustee may avoid the tranfers here alleged to be fraudulent, and that the right to maintain an appropriate action to recover the property so transferred, or its value, is vested in him and in him alone."  The same construction is applied to this statute in the case of Chas. D. Adams, 1 Am. Bank.Rep. 94. And again, the case of *Trimble* v. *Woodhead*, 102 U. S. 647, which approves and affirms the previous case of *Glenny* v. *Langdon*, 98 U. S. 20, we regard as controlling of the question that this suit is not maintainable by the creditor, these cases holding that the trustee and the trustee alone, must sue.  In the case of *Moyer* v. *Dewey*, 103 U. S. 301, it is said: "The right to sue for and subject to the payment of his debts, effects fraudulently transferred by a party who was subsequently adjudicated a bankrupt is vested alone in his assignees, and their failure to enforce it within the time prescribed by the bankrupt law does not transfer that right to his creditors."  In *Glenny* v. *Langdon*, *supra*, it is held: "It is only through the instrumentality of his assignees that creditors can recover, and subject to the payment of their claims, the property which the bankrupt fraudulently transferred prior to the adjudication in bankruptcy, or which he conceals from, and fails to surrender to, his assignees.  Assignees of the bankrupt are subject to the control and direction of the proper court, and it may, for good cause shown, compel them to take the requisite steps for the full and complete protection of the rights of his creditors."  Section 11 of the Bankruptcy Act, which provides that no suit shall be brought by or against the trustee of a bankrupt's estate subsequent to two years after the estate has been closed, does not give the creditor the right, after the expiration of that time, to do so.  As said in *Trimble* v. *Woodhead*, *supra:*  "We do not see on what principle the failure of the assignee to sue within two years transfers his right of action to the

complainant. The right was certainly in the assignee, and, if barred by the Statute of Limitations, would, if it had any effect on the title, make good the title of the defendant. * * * Nor is the creditor of a bankrupt without remedy in such a case as the present. If he is aware of the existence of property or credits, which should rightfully go to the assignee for the benefit of the creditors, he should inform the assignee of all he knows on the subject, and request him to proceed, by suit if necessary, to recover it. If he declines, a petition to the court of original jurisdiction would, if a proper case was made, compel the assignee to proceed. * * The primary object of the bankrupt law is to secure the equal distribution of the property of the bankrupt of every kind among his creditors. This can only be done through the rights vested in the assignee, and by the faithful discharge of his duties. Let us suppose, however, that a creditor is aware of the existence of property of the bankrupt sufficient to satisfy his own debt, which has not come to the possession or knowledge of the assignee. He has but to keep silence for two years, and then bring suit in his own name against the fraudulent holder of this property, and make his debt really at the expense of the other creditors; or he may have an understanding with the bankrupt, who, after two years, and after his own discharge from all his debts, may confess judgment to this creditor and furnish him the evidence to prove the fraud, and thus secure him a preference forbidden by the act itself."

We find the decree of the circuit court fully sustained by reason and authority, and it is therefore affirmed.

*Affirmed.*