**In re NINETEENTH & WALNUT STREETS CORPORATION.**

**In re RITTENHOUSE PLAZA APARTMENT CORPORATION.**

**No. 18348.**

District Court, E. D. Pennsylvania.

Feb. 6, 1935.

Wise, Shepard & Houghton, of New York City, and Sundheim, Folz & Sundheim,

of Philadelphia, Pa., for Continental Bank & Trust Co. of New York City.

Hirschwald, Goff & Rubin, of Philadelphia, Pa., for permanent trustees.

WELSH, District Judge.

This is a proceeding for reorganization under section 77B of the Bankruptcy Act (11 USCA § 207), instituted December 17, 1934. On that day, a petition for reorganization was filed by the Nineteenth & Walnut Streets Corporation as "debtor," and a similar petition filed by the Rittenhouse Plaza Apartment Corporation as a "subsidiary debtor." The property involved is the Rittenhouse Plaza Apartment, a twenty-two-story building located at the northwest corner of Nineteenth and Walnut streets, Philadelphia, Pa.

Both petitions were approved, and William M. Anderson, the president of both corporations, and William H. Shoemaker were appointed temporary trustees. On December 20, 1934, on representations by the Continental Bank & Trust Company of New York City that it was successor trustee and mortgagee in possession of the property, we permitted that company to act in conjunction with the temporary trustees.

The question before us is whether the temporary trustees should be made permanent trustees, and we shall consider also our former order permitting the Continental Bank & Trust Company of New York City to participate in the management and operation of the apartment in question.

Upon both matters, a review of the facts of the case is essential.

The Nineteenth & Walnut Streets Corporation (the debtor) was the owner of the apartment in question on July 7, 1924. On that date, it executed a $3,200,000 first mortgage upon the property, in the form of a trust mortgage to secure a bond issue of like amount, of which the said debtor was the obligor. The trustee and mortgagee named in the instrument was one Walter S. Klee. Subsequently, at a date which does not appear, Klee resigned, and the present Continental Bank & Trust Company of New York City became, and is now, the successor trustee and mortgagee. The trust mortgage provides (article VIII) that upon default in the payments due thereunder, the trustee mortgagee may enter and take physical possession of the apartment, and retain the same, together with all the revenues therefrom, until the indebtedness be fully paid.

The Rittenhouse Plaza Apartment Corporation (the subsidiary debtor) became owner of the apartment, subject to the mortgage, by conveyance from the debtor on October 1, 1925. Subsequently, on March 11, 1932, being then considerably in default in its payments under the mortgage, it entered into a written agreement with the Continental Bank & Trust Company of New York City specifically confirming the provisions of article VIII of that instrument, and assigning to that company all the leases of its tenants, and otherwise vesting the company with full right to take possession of the apartment, and to hold the same, together with all its revenue, until the mortgage and bond indebtedness was fully paid. Clause VII of the agreement specially preserves the sanctity and security of the mortgage by providing that "it is expressly understood and agreed that this agreement shall not, nor shall anything done hereunder or pursuant hereto, constitute a waiver of any existing or future defaults under and/or with respect to the terms of the Trust Mortgage or any of the covenants or conditions of said Trust Mortgage or the bonds therein referred to, or of any right or remedy therein provided, regardless of the discharge from time to time, pursuant hereto, of some items of default, and neither this agreement nor any act, payment or proceeding hereunder shall prejudice in any way the right of the Assignee to proceed to enforce any right or remedy of the said Trust Mortgages including, without limiting the generality of the foregoing, the right to declare the said Trust Mortgage and the bonds therein referred to and secured thereby immediately due and payable, as therein provided, and to institute an action for the complete or partial foreclosure of said Trust Mortgage and in any such action to apply for and obtain the appointment of a receiver of the rents, issues and profits of said premises."

On March 11, 1932, by virtue of said agreement, the Continental Bank & Trust Company entered and took possession of the apartment, and has been managing and operating the property down to the appointment of the temporary trustees, on December 17, 1934. On January 21, 1935, it filed its petition for leave to intervene in the present reorganization proceedings, and praying the court to vacate any previous order made by it which might disturb or impair its right to the exclusive possession of the apartment. On the same day, and by the same counsel, three bondholders, averring that they had provable claims aggregating $52,000, filed a paper styled an "Answer" to the debtor's petition, controverting the material allegations of said petition. Motions to strike off both these papers have been filed by counsel for the temporary trustees. Among the reasons assigned by the Continental Bank & Trust Company in support of its prayer that the temporary trustees be dismissed, is the statement that "there does not appear, in the petitions filed by the debtor and subsidiary debtor, to be any assets in the possession of the debtor or subsidiary debtor, at the time of the filing of the petitions." Against this is the statement of the debtor or subsidiary debtor in their petitions that the assets exceed the liabilities by approximately $400,000, as follows:

Assets:

| | | |
|---|---|---|
| Land Value | $3,975,000 | |
| Good Will | 250,000 | $4,225,000 |

Liabilities:

| | | |
|---|---|---|
| 1st mortgage bond issue of $3,-200,000, less bonds retired $400,000 | $2,799,500 | |
| Interest due thereon | 403,128 | |
| 1st mortgage bond issue of $3,-200,000, less bonds retired $400,000 | 2,799,500 | |
| Interest due thereon | 403,128 | |
| 2nd Mortgage | 480,000 | |
| Interest due thereon | 112,800 | |
| 5,970 shares Capital Stock, no par value | 5,970 | $3,801,398 |

(Exclusive of City Taxes.)

Thus it appears that objection to making permanent the previous appointment of trustees comes principally from the Continental Bank & Trust Company, and mainly upon the proposition that the right of possession of the property given it by article VIII of the trust mortgage and by the subsequent written agreement of March 11, 1932, rises superior to the jurisdiction and powers of this court.

■ The proposition is unsound. The jurisdiction and powers of this court override and are paramount to the rights claimed by the company as trustee mortgagee. Upon the approval of the petitions in this proceeding, the exclusive jurisdiction of the debtor and its property passed to this court, and it became vested with all the powers which a federal court would have had it appointed a receiver in equity to take possession (section 77B, cl. (i), Bankr. Act, 11 USCA § 207 (i). Upon the appointment of the temporary trustees, the possession of the Continental Bank & Trust Company, as trustee mortgagee, was subject to be divested and transferred to the trustee. Even if the property

had been in the possession of a receiver or trustee previously appointed by another court, the temporary trustees would have been "entitled forthwith to possession of and vested with title to such property" (clause i), to have and to hold the same until its ultimate transfer and conveyance back to the debtor upon final confirmation of the plan of reorganization (clause (h), § 77B of the act, 11 USCA § 207 (h).

■ The proposition contended for is the more untenable when it is considered that, in Pennsylvania, title to mortgaged premises is in the mortgagor, and the mortgage is mere incumbrance and accessory to the debt, as to all other parties than the parties themselves to the mortgage. Randal v. Jersey Mortgage Investment Co., 306 Pa. 1, 5, 158 A. 865; and see Bulger v. Wilderman, 101 Pa. Super. 168, 173. Such also is the ruling of Woolley, C. J., of this Circuit, in Brunn v. Wichser (C. C. A.) 75 F.(2d) 25, decided December 19, 1934, wherein, after reviewing the case of Harper v. Consolidated Rubber Company, 284 Pa. 444, 131 A. 356, Judge Woolley says: "We regard this state case interpreting state law as controlling upon this federal court."

As therefore the position assumed by counsel for the trustee mortgagee and the three separate bondholders is a fallacious one, and no objections are before us from the holder of the second mortgage of $400,000, or from any of the other parties in interest in the proceeding, the temporary trustees heretofore appointed are made the permanent trustees of the business, property, and assets of the debtor and subsidiary debtor corporations, and counsel for them may prepare an appropriate order to this effect.

We consider now our order of December 20, 1934, permitting the trustee mortgagee to act in conjunction with the temporary trustees.

■ When we made that order, we did not anticipate a lack of co-operation on the part of the trustee mortgagee with the temporary trustees. We find, however, that upon request made by the trustees, the Continental Bank & Trust Company at first refused to deliver a list of the bondholders under the trust mortgage, and that upon being con-fronted with evidence that such a list was in its possession, it continued to deny the trustees the right to have such list. Our trustees further report habitual conduct on the part of the company tending to retard and thwart the efforts of the trustees to participate in the management and operation of the property. Moreover, it appears that the company is not itself actually managing and operating the property, but has confided the management and operation to a third party whom we know nothing of, and did not designate to act in conjunction with the trustees, a so-called Reliance Management, Inc., of New York City.

We regard the conduct referred to as not conducive to the best interests of all concerned in this proceeding. Principally we regard with great disfavor the inability of our trustees to procure a list of the bondholders, so necessary to the proper discharge of their responsible duties. We hesitate to believe that the failure to deliver this list has its origin in that policy of some "Bondholders' committees" throughout the country, so inimical to the investments of good, sound thrifty Americans that it has been found necessary to invoke a Congressional investigation which is now in progress. We do not hesitate to say, however, that it is beginning to appear increasingly that huge millions of deposited bonds are sometimes pledged for comparatively small loans; that the bondholders' lists are bartered and traded in by insiders; and that it is but common justice that any bondholder should be entitled to have all the names of his fellow bondholders in a defaulted issue. In the present case, our order contemplated a turning over of the list of bondholders to our trustees, and we anticipate a ready compliance with that order by the party in charge of it.

Meantime, as under section 77B, the exclusive title and possession of the debtor and subsidiary debtor's property are in this court and its trustees, we regard as improvidently made our order of December 20, 1934, permitting the Continental Bank & Trust Company to act in conjunction with the trustees, and accordingly that order must be vacated, and all pending petitions and motions at variance with the views expressed in this opinion are dismissed.