**GOCHENOUR et al. v. GEORGE & FRAN-
CIS BALL FOUNDATION et al.**

No. 190.

District Court, S. D. Indiana, Indianapolis
Division.

Feb. 15, 1940.

Judgment Affirmed Jan. 21, 1941.
See 117 F.2d 259.

Joseph & Dann, of Indianapolis, Ind., and Shulman, Shulman & Abrams, of Chicago, Ill., for plaintiffs.

Thompson & Smith, of Indianapolis, Ind., and Warner, Clark & Warner, of Muncie, Ind., for defendants.

BALTZELL, District Judge.

This is a class action brought by A. B. Gochenour and ten others in their individual capacity and on behalf of all of the creditors of The Cleveland Terminals Building Company (hereinafter referred to as the "Terminals Company"), an Ohio corporation. The individual plaintiffs are residents of states other than Indiana. The defendant, George and Francis Ball Foundation, is an Indiana corporation, and the defendants, George A. Ball and F. B.

Bernard, are residents and citizens of the State of Indiana.

The complaint charges that, in the month of August, 1935, O. P. Van Sweringen and M. J. Van Sweringen, each of whom was, at the time of the commencement of this action, deceased, together with one Charles L. Bradley, the defendants, George A. Ball, F. B. Bernard and others entered into a conspiracy for the purpose of defrauding the creditors of the Terminals Company, and of benefiting themselves. The facts which are alleged to have constituted such conspiracy are hereinafter referred to in this memorandum.

This action was begun by the filing of a complaint on October 11, 1939, to which complaint the defendants addressed a motion to dismiss on October 27. Plaintiffs, by leave of court, filed an amendment to their complaint, which amendment was filed on November 16, on which date the defendants' motion to dismiss was re-filed and addressed to the complaint as amended. There are to be found in Paragraph 18 of the amendment to the complaint certain allegations with reference to the action taken by the United States District Court for the Northern District of Ohio, Eastern Division, sitting as a bankruptcy court, in which court a reorganization proceeding under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, is pending for the Terminals Company and was so pending at the time of the commencement of this action. The defendants have challenged the correctness of those allegations by filing the affidavit of Roger P. Brennan to which is attached, as exhibits, certified copies of the proceedings in that court, in support of their motion to dismiss. A stipulation was filed on January 12, 1940, giving the court permission to consider such affidavit, together with the exhibits attached thereto, as well as a memorandum of certain bondholders filed in that proceeding, together with the allegations contained in the complaint and amendments thereto in this action, in determining such motion.

It is not deemed necessary to detail, at any great length, the allegations contained in the complaint, all of which, with the exception of those contained in Paragraph 18 of the amendment, the correctness of which is challenged by the defendants, must be accepted as true for the purpose of considering the motion to dismiss. In order that a clear understanding may be had of the questions presented for determination it is, however, deemed necessary to briefly review the charges contained in the complaint. It will be understood that any statement or statements made herein purporting to be a fact or facts are simply the allegations of such fact or facts contained in the complaint and amendment thereto.

On October 31, 1930, the Terminals Company executed its promissory note in the principal sum of $23,500,000, to secure the payment of which, certain collateral, the property of the Terminals Company, was deposited therewith, among which collateral so deposited were the following stocks and bonds:

| | |
|---|---|
| 1,435,360 | shares Alleghany Corp. Common Stock (no par value) |
| 2,765 | shares Alleghany Corp. Cum. 5½% Pfd. Stock "A" Ex. Warrants ($100 par value) |
| 20,950 | shares Alleghany Corp. Cum. 5½% Pfd. Stock "A" with $30 Warrants ($100 p. v.) |
| 3,920 | shares Alleghany Corp. Cum. 5½% Pfd. Stock "A" with $40 Warrants ($100 p. v.) |
| 100,000 | shares The Higbee Co. Common Stock (no par value) |
| $317,000 | The Alleghany Corp. 20-Year Coll. Tr. Conv. 5% bonds Series of 1930 due April 1, 1950 C/B's |
| $930,000 | The Cleveland Terminals Building Co. 2nd Mtge. 6% bonds due May 1, 1935. |
| $258,506.94 | The Higbee Co. 6% Subordinated Note due March 1, 1934. |

This note, together with the collateral deposited therewith, was delivered by the Terminals Company to the Vaness Company, a holding company, which was managed and controlled by the same individuals as those who comprised the officers and directors of the Terminals Company. At the same time there was executed by the Vaness Company its certain promissory note in the principal sum of $16,000,000, to secure the payment of which, certain collateral, the property of the Vaness Company, was deposited therewith. Both of these notes, together with the collateral deposited therewith, were delivered to J. P. Morgan & Company, which principal amounts, together with six per cent interest per annum thereon, were payable at their office on May 1, 1935. Of the collateral thus deposited there remained on de-

posit with J. P. Morgan & Company, on September 30, 1935, the above-listed stocks and bonds of the Terminals Company, as well as certain collateral belonging to the Vaness Company.

It is alleged that, during the month of August, 1935, O. P. Van Sweringen and M. J. Van Sweringen were the principal officers and directors of the Terminals Company and in charge of all its affairs, at which time it was insolvent; that they, together with one Charles L. Bradley, became trustees of its property for the benefit of its general creditors; that it, therefore, became their duty to exert every effort to protect its property for the benefit of its general creditors; that they knew that the collateral deposited with J. P. Morgan & Company would be sold upon default of the payment of the Terminals Company's note; that they did not notify the creditors of such default and sale, but, instead, entered into a conspiracy with the defendants Ball, Bernard and others to purchase such collateral at a nominal and inadequate price. For the purpose of furthering or perfecting such conspiracy, plaintiffs say that the Midamerica Corporation, an Ohio corporation, was incorporated on September 26, 1935; that, on September 30 of that year, the same day upon which the Terminals Company's collateral was sold by J. P. Morgan & Company, but prior to the hour of the sale, at an organization meeting, the following officers and directors for such corporation were elected, to-wit:

O. P. Van Sweringen, Director and President

M. J. Van Sweringen, Director and Vice-President

Charles L. Bradley, Director and Vice-President

G. A. Ball, Director

G. A. Tomlinson, Director

F. B. Bernard, Director

J. J. Anzalone, Treasurer.

John P. Murphy, Secretary,

and that of such officers and directors, Anzalone and Murphy were, at that time, officers of the Terminals Company. At such meeting, O. P. Van Sweringen was authorized to purchase, on behalf of the Midamerica Corporation, the collateral deposited by the Vaness Company and by the Terminals Company, at the sale held later that day by J. P. Morgan & Company; that, pursuant to such authority, he did purchase such collateral, paying for the

Terminals Company collateral the sum of $318,000, which such sum was much less than the actual market price thereof, thereby enabling such corporation to realize a large profit from such transaction, alleging such profit to have been $1,816,068.75. Plaintiffs say that, at all times, defendants knew the real value of such collateral and that, through its purchase and the further purchase of the Vaness collateral, the Midamerica Corporation was enabled to gain control of the following railroads, to-wit:

Chesapeake & Ohio Ry. Co.
Pere Marquette Ry. Co.
New York, Chicago & St. Louis R. R. Co.
Erie R. R. Co.
Missouri Pacific R. R. Co.
New Orleans, Texas & Mexico R. R. Co.
Texas & Pacific R. R. Co.
Chicago & Eastern Illinois Ry. Co.
Wheeling & Lake Erie Ry. Co.
International & Great Northern Ry. Co.

From the operation of such railroads large profits are alleged to have been derived by these individual defendants, and others.

Subsequent to the purshase of the Terminals Company's collateral by Midamerica Corporation, O. P. Van Sweringen and M. J. Van Sweringen died; that thereafter, the defendant, George A. Ball, acquired 93.67 per cent of the corporate stock of the Midamerica Corporation and transferred it to the defendant, George and Francis Ball Foundation, without consideration; that such Foundation, being an Indiana corporation, was organized by the defendants, George A. Ball and F. B. Bernard. The complaint sets forth the details of a certain transaction alleged to have taken place between the defendant, Foundation, and the purchaser of certain assets from the Midamerica Corporation and alleges that the cash realized from the sale of such assets was distributed among the stockholders of the Midamerica Corporation in the form of liquidating dividends. Shortly, thereafter, the defendant, Foundation, is alleged to have acquired the remaining capital stock of such corporation and it is now the sole owner thereof. This transaction took place on or about May 4, 1937.

It is the theory of the original complaint that the alleged acts of the defendants, together with the Van Sweringens, and others, as alleged therein, constituted a conspiracy, upon their part, to acquire at a price much less than its actual value, the

512

Terminals Company's collateral and to dispose of it at a large profit to themselves, which property had been prior thereto impressed with a trust in favor of the creditors of the Terminals Company. Plaintiffs ask that these defendants be required to account to such creditors for all such transactions and profits realized thereby; that all property so acquired by defendants be impressed with a trust and charged with a lien in favor of the general creditors of the Terminals Company; that a receiver should be appointed to take charge of all the property belonging to the trust estate and, upon the recovery of the assets, make distribution among such creditors, etc.

It is alleged in the complaint, and is a fact, that the Terminals Company is undergoing reorganization, such reorganization proceedings having been instituted (long prior to the institution of this action) in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to the provisions of Section 77B of the Bankruptcy Act. No trustee was appointed by the bankruptcy court, but debtor was permitted to remain in possession, and it has been in possession, under the control of that court, since the approval of the petition under which such court acquired jurisdiction. The plaintiffs in this action and other general creditors have filed their claims with the bankruptcy court in such proceeding and have had them allowed. There has also been filed in the United States District Court for the Northern District of Ohio, Eastern Division, by these plaintiffs, Cause No. 19982, an action against certain individuals and corporations who are residents and citizens of the State of Ohio, such cause of action having been filed in September, 1939. The cause of action therein asserted is the same cause of action as is alleged in the instant case, and it is now pending in that court. The defendants in this action are not made parties to that action because it is asserted that no personal judgment could be obtained against them therein.

Paragraph 18 of the amendment to the complaint alleges that, simultaneously with the filing of the complaint in the United States District Court for the Northern District of Ohio (Cause No. 19982) a motion was filed in the bankruptcy court (Cause No. 40954) in which the reorganization proceeding is pending, asking leave of that court to join the Terminals Company as a party plaintiff or defendant in Cause No. 19982, and that such motion was referred to a master to determine whether or not such company was a necessary, indispensable or proper party in such action. It is then alleged "that the Master had rendered his Report that the said corporation is neither a necessary, indispensable nor proper party and that, therefore, the Motion for leave to join said corporation as a party should be denied. That, on the 10th day of November, 1939, the court entered an order approving the Master's Report and determined that The Cleveland Terminals Building Company was not a necessary, indispensable or proper party." The correctness of the allegations contained in such paragraph is challenged by defendants, as shown by the affidavit of Roger P. Brennan, to which is attached certified copies of the proceedings in the bankruptcy court pertaining to such motion, which, by stipulation, may be considered by the court in passing upon the motion to dismiss. It is also alleged in the amendment to the complaint that both the Van Sweringen Corporation (parent to the Terminals Company) and J. P. Morgan & Company had large claims allowed as general creditors by the bankruptcy court in the reorganization proceeding of the Terminals Company, but that they stand in a different class from plaintiffs because of the fact that they actively participated in the acquisition of the Terminals Company's collateral, as charged in the complaint, and that, therefore, this action is not prosecuted by plaintiffs on their behalf.

The defendants have filed a motion to dismiss upon the following grounds:

*First:* That the plaintiffs are not the real parties in interest.

*Second:* That, under Section 77B of the Bankruptcy Act, when a debtor is left in the possession of its property in a reorganization proceeding, it is vested with the same title that a trustee in bankruptcy would have if one had been appointed in such proceeding; that the debtor, the Terminals Company, being left in possession by the bankruptcy court of the United States District Court for the Northern District of Ohio in the reorganization proceeding now pending in that court, is the only person who can maintain an asserted cause of action like that set forth in the complaint in the instant case; that the right to sue is vested solely in such Terminals Company and that, therefore, the plaintiffs have no right to maintain this action.

*Third:* That the court in which a reorganization proceeding under Section 77B of the Bankruptcy Act is pending has jurisdiction of all assets of the bankrupt and of all claims, debts and demands due such bankrupt; that the plaintiffs, therefore, are not entitled to maintain this action because it interferes with the orderly and proper administration of the bankrupt estate.

On oral argument it was suggested that the main question for determination is whether this cause of action is an asset of the debtor, the Terminals Company, or whether it is an asset of the creditors, as a class, which are represented by plaintiffs in this action. It was admitted that, if this cause of action is an asset of the debtor company, then, it can be maintained by these plaintiffs *only* if it be assumed that such asset had been abandoned by the debtor, or if the bankruptcy court has consented, by its order, to its maintenance, Mr. Abrams saying, "If it is a corporate asset, then, it can only. be maintained if your Honor will assume the position that a trustee has abandoned that part of the assets, or if the court consented by its order." He also stated, "If there is a cause of action which belongs to the corporation * * * then, I couldn't file this suit without the consent of the District Court handling the 77B and I could file it with the consent of that court * * *." The questions for determination are, therefore, stated rather clearly by this suggestion and admission.

It is the contention of the plaintiffs, *First,* that this cause of action is not an asset of the bankrupt's estate, but is an asset of the class of creditors, represented by them, and that they therefore have a right to maintain such action; *Second,* that the bankruptcy court in which the reorganization proceeding is pending, by its order, consented to the maintenance of this action; and *Third,* that if it is an asset of the bankrupt's estate, it has been abandoned by the debtor.

On the other hand, it is the contention of the defendants that this cause of action is an asset of the bankrupt's estate; that the title thereto is in the debtor in possession and that it can be maintained only by the debtor in possession which stands in the place of a trustee; that this action is an intrusion upon the fair and orderly administration of the estate of the bankrupt in the bankruptcy court and that, therefore, this court is without jurisdiction to try and determine the same.

It must be kept in mind at all times that the Terminals Company was, at the time of the commencement of this action, and had been for some time prior thereto, undergoing a reorganization under Section 77B of the Bankruptcy Act, and that all its assets were under the exclusive jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division, the court in which such proceeding was pending. The petition for reorganization was apparently filed prior to the taking effect of Chapter X of the Bankruptcy Act, as amended, 11 U.S.C.A. § 501, et seq., such act being commonly known and referred to as "The Chandler Act," and there is nothing in the complaint to indicate that the court having jurisdiction of such proceeding has made the Chandler Act applicable thereto. It makes no difference, however, whether under Section 77B or under Chapter X, because, under the order of the bankruptcy court, the debtor (The Cleveland Terminals Building Company) was continued in possession of its property, there being no trustee appointed, and it, therefore, has all the title, is vested with all the rights, is subject to all the duties, and may exercise all the powers of a trustee appointed under either Section 77B or Chapter X. 11 U.S.C.A. § 207, sub. c(2) and §§ 587, 588. See, Central Hanover Bank & Trust Company v. Philadelphia & Reading Coal & Iron Company et al., 3 Cir., 99 F.2d 642. A trustee is vested by operation of law with the title of the bankrupt to all its assets. 11 U.S.C.A. §§ 110, 586. In the case of Isaacs v. Hobbs Tie & Timber Company, 282 U.S. 734, 51 S.Ct. 270, 271, 75 L.Ed. 645, 647, the court said, "Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. * * * The title * * * vests in the trustee * * * no matter whether situated within or without the district in which the court sits. * * * It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate. * * * When this jurisdiction has attached, the court's possession cannot be affected by actions brought in other courts." See, also, In re Bogena & Williams, 7 Cir., 76 F.2d 950; In re 7000 South Shore Drive Bldg. Corp., 7 Cir., 86 F.2d 499; Kalb et al. v. Feuerstein et al., Jan. 2, 1940, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370. It is, therefore, apparent that the debtor, in this instance, the Terminals

Company, is vested with the title to all its assets, wherever located, and that all its assets are within the jurisdiction of the bankruptcy court in which the reorganization proceeding is pending. See In re Middle West Utilities Company, D.C., 9 F.Supp. 38; In re Nineteenth & Walnut Streets Corp., D.C., 9 F.Supp. 625; In re Pierce-Arrow Sales Corp., D.C., 10 F. Supp. 776.

It is clear that a "cause of action" is an asset or a property right of the individual to whom it belongs. It is equally clear that, under the Bankruptcy Act, the title to a "cause of action" which belonged to the individual prior to bankruptcy passed to the trustee in bankruptcy upon adjudication. 11 U.S.C.A. § 110, sub. a(6). Under either Chapter X or Section 77B of the Bankruptcy Act, as amended, the title to a "cause of action" which belonged to the corporation prior to the filing or approval of the petition passed to the trustee or to the debtor in possession upon the filing or approval of such petition. Is the "cause of action" asserted in this case one that belongs to the debtor, or, as contended by plaintiffs, is it one that belongs to the class of creditors which they represent? In considering that question, it may be well to look for a moment to the transactions which plaintiffs say constitute the basis of the "cause of action" and upon which they rely to establish their right to maintain this action. The title to the collateral deposited by the Terminals Company with its note on October 31, 1930, was vested in that company at that time; that is to say, the stocks and bonds deposited as collateral belonged to the Terminals Company and were deposited for the purpose of securing the payment of its note insofar as their value would extend. This collateral remained the property of the Terminals Company until sold by J. P. Morgan & Company upon default in the payment of the note for which it had been pledged to secure the payment. If this note had been paid in accordance with its terms, without resort to the sale of the collateral, then, and in that event, the collateral would have been returned to its owner, the Terminals Company, and would have remained its property. Had this company then filed a petition for reorganization under Section 77B of the Bankruptcy Act, the collateral theretofore pledged would have been a part of the company's assets, the title thereto would have passed to the debtor in possession, and it would have been under the jurisdiction of the court in which the reorganization proceeding is pending. However, the note was not paid when due and, under the law, the holder of such note (in this instance J. P. Morgan & Company) had the right to sell such collateral and to apply the proceeds derived from such sale upon the note. This was done but at a time when, under the allegations of the complaint, the Terminals Company was insolvent. At this stage of the proceeding, the Midamerica Corporation was organized for the purpose of purchasing such collateral, and some of the officers and directors of this newly organized corporation were also officers of the Terminals Company. It is charged that such individuals at that time were trustees of the Terminals Company because of its insolvency, and that its property was held by them in a fiduciary capacity for the benefit of its creditors which constitute the class represented by these plaintiffs; that because they violated their trust, purchased the collateral for the Midamerica Corporation at a price much less than its actual value, and realized a large profit thereby, the asserted cause of action in this case ceased to belong to the Terminals Company, but passed to such creditors. Again, we are confronted with the question, had bankruptcy not intervened, could these creditors have maintained this action, or is it a derivative action and one that must have been maintained by the company that was the owner of the collateral at the time of the sale and suffered the loss, if any, or by some one in its behalf and acting in its stead.

In the instant case, the officers and directors of the Terminals Company are charged with the violation of their fiduciary duty because of which violation the creditors of such company are alleged to have suffered great losses. In the case of Hall Hardware Company v. Ladson Brick & Tile Company, 160 Ga. 341, 127 S.E. 754, there was involved a claim against the directors and managers of an insolvent corporation. In that case, the Supreme Court of Georgia said, (court syllabus) "* * * the right of action to recover such assets for the benefit of its creditors, after the corporation has been adjudged a bankrupt, is in the trustee of the bankrupt, and not in a creditor who sues for himself and all other creditors of the corporation." Again, in the case of Manning et al. v. Campbell et al., 264 Mass. 386, 162 N.E.

770, 771, a suit to enforce the common-law right of a corporation to hold its officers liable for a breach of their fiduciary duty to it, the court said, "The general allegations of negligence and mismanagement are sufficiently definite not to be demurrable. Upon these allegations the company before bankruptcy could have maintained a suit * * *. This right of action was an asset of the company and passed to its trustees in bankruptcy. 11 U.S.C.A. § 110(a) (6) * * *."

 In speaking of the position which a director occupies, with reference to the corporation, Glenn on Liquidation, 1935, § 334, says, "* * * While not a trustee in a strict sense for the reason that he has not the title to the estate, a director is in a fiduciary position because he and his fellows have control of the corporate property. Violating his fiduciary obligation, whether by sheer embezzlement, direct or procured, or by methods more subtle, the director comes under the same obligation to his company that any agent is under who is faithless to his trust. Should the corporation become insolvent, this claim for an accounting, restitution or equitable damages, passes to its liquidator along with its other assets; and, as there can be but one claim, it follows that only the liquidator may sue the faithless directors. The cause of action being in the liquidator, no creditor can sue the directors, either for himself alone, or in a class suit." See, also, McEwen v. Kelly, 140 Ga. 720, 79 S.E. 777; 8 Corpus Juris Secundum, Bankruptcy, p. 659, § 194, subd. c. (2); 2 Thompson's Corp., 2d Ed., § 1316. Neither of the personal defendants in this action was a director or an officer in the debtor corporation, but they are charged with having been members of a conspiracy of which some of the directors and officers of such debtor were also members. It would, therefore, seem that the fact that some of the persons who are alleged to have been guilty of wrongdoing and of having violated their fiduciary obligations were members of an alleged conspiracy, is insufficient, within itself, to take from the debtor the right to assert a cause of action against such wrongdoers and lodge such right in a special class of creditors. A cause of action brought to recover losses due to mismanagement and negligence of the officers and directors of a corporation is an asset of such corporation or of the receiver or trustee thereof and may be maintained only in the right of such corporation for the benefit of all persons who are en-

titled to participate in the distribution of its assets. Gary v. Matthews, 148 S.C. 125, 145 S.E. 702. Creditors of a bankrupt corporation cannot ignore the debtor in possession and the jurisdiction of the court in which the bankruptcy proceeding is pending and maintain an independent action in the name of the creditors and for their benefit upon the theory that the officers and directors of such bankrupt corporation were delinquent in failing to prevent the loss to such corporation, and that their action actually caused such loss. Ruckel v. Metropolitan Life Insurance Company, 119 Kan. 593, 240 P. 409.

 The collateral of the debtor was pledged to secure the payment of its note, it remained its property until sold, and any cause of action which may have resulted from such sale is an asset of the debtor and is under the exclusive jurisdiction of the bankruptcy court. The plaintiffs in this action, and the class to which they belong, have each, under the allegations of the complaint, filed his claim in the bankruptcy court, and the same has been allowed by that court. Each will participate in the assets of the debtor in proportion to the amount of his claim. If the cause of action asserted in this case is asserted by the debtor and recovery had, the plaintiffs and their class will participate in such recovery along with any others who, under the Bankruptcy Act, are entitled to so participate. The question of such participation and the extent thereof is under the exclusive jurisdiction of the bankruptcy court. An examination of the cases upon which plaintiffs rely in support of their right to maintain this action discloses that such authorities are not in point when applied to facts such as those alleged in the complaint.

On September 11, 1939, there was filed in the United States District Court for the Northern District of Ohio, Eastern Division, a civil action—Cause No. 19982—by A. B. Gochenour and other general creditors of the Terminals Company, as a class, against certain residents and citizens of the State of Ohio, upon the same cause of action as that asserted in the instant case. On the following day there was filed in such District Court, sitting as a bankruptcy court, in Cause No. 40954—that being the cause in which the reorganization proceeding of the Terminals Company was then and is now pending—by the plaintiffs in Civil Action No. 19982, a petition praying

for an order permitting and directing that the Terminals Company be made a party plaintiff or defendant in such civil action. The petition, to which there was attached, as an exhibit, a copy of the complaint in Cause No. 19982, was referred to a special master for hearing, consideration and report. In Paragraph 18 of the amendment to the complaint in this case it is alleged that the master reported to the court that the Terminals Company is "neither a necessary, indispensable nor proper party" in Cause No. 19982 and that he recommended that such petition be denied. It is further alleged that the master's report was approved by the court, and that the court "determined that The Cleveland Terminals Building Company was not a necessary, indispensable or proper party." The correctness of this allegation is questioned by the defendants and, in order that the court may have the record in the reorganization proceeding before it in determining the motion to dismiss, the parties to this action entered into a stipulation, as heretofore stated, wherein it is agreed that the certified copy of the documents on file in Cause No. 40954 in the Ohio District Court, as shown by the affidavit of Roger P. Brennan filed in this action, may be considered by the court in its ruling upon the defendants' motion to dismiss.

As shown by the certified copy of the proceedings in the bankruptcy court, in Cause No. 40954, on October 26, 1939, the master, to whom was referred the petition of Gochenour and others, filed in that court his report, which report shows that, "by agreement of counsel, hearing upon said petition was set for September 26, 1939, at ten A. M., at which hearing evidence was offered and some argument was had"; that on September 27, the debtor, Terminals Company, filed its answer to such petition in which it did not consent to the granting of the petition; that on September 29 one of the committees representing bondholders of the debtor filed its memorandum in opposition to the petition. In discussing the question presented by the petition, the master said, "the petition prayed for an order permitting and directing that the subsidiary debtor be made a party plaintiff or defendant in Civil Action, Case 19982. In other words, the petition seeks to vacate an order hereinbefore entered by the honorable judges restraining action against the subsidiary debtor." The master further found, and so stated in his report, that the only

reason stated in the petition as to why such an order should be entered is that the joining of the debtor company, as a party, will in no wise interfere with the administration of its affairs in the reorganization proceeding. It is to be noted that the plaintiffs did not seek permission to maintain Civil Action No. 19982 as a derivative action in the name of the debtor, or upon its behalf, but simply sought permission to make the debtor a party to such action. It was recommended by the master, in his report, that, "for the reason that the petition does not allege, and no evidence has been adduced, that subsidiary debtor is either a proper, necessary or indispensable party in cause No. 19982, pending in the District Court of the United States for the Northern District of Ohio" the petition should be denied. The bankruptcy court approved the master's report and denied the petition.

It is the contention of plaintiffs that this action of the bankruptcy court is, in effect, an order conferring authority upon them to institute and maintain this action. This court, having heretofore held that the cause of action asserted in the complaint is an asset of the debtor in the reorganization proceeding, these plaintiffs have no right to maintain this action unless the order of the bankruptcy court relinquished its jurisdiction over such asset, or, as a matter of law, the cause of action has been abandoned by the debtor. As a matter of fact, the action is a derivative one and must be maintained by either the debtor or some one in its behalf.

The order of the bankruptcy court denying the petition of plaintiffs to make the debtor a party in Cause No. 19982 is based upon the finding and recommendation of the master, the court stating that it "approves the Report of the Special Master and adopts the recommendations therein contained." The order followed denying the petition. An examination of the master's report will disclose the fact that he did not find, as alleged in the amendment to the complaint, that the Terminals Company is "neither a necessary, indispensable nor proper party." What the master did find, as disclosed by his report, was that "no allegations are made that subsidiary debtor is either a proper, necessary or indispensable party in the civil action." The master further found that "An examination of the Complaint attached to the petition also shows that no relief is prayed therein against subsidiary

debtor and no allegation is made that subsidiary debtor is a proper, necessary or indispensable party." The subsidiary debtor mentioned in the master's report is the Terminals Company. There is a vast difference in a finding of the court that the complaint contains no allegation that the debtor is "either a proper, necessary or indispensable party" and a finding, as alleged in the amendment to the complaint, that the debtor is "neither a necessary, indispensable nor proper party." Had the order of the court been as alleged in. the amendment, a different question might have been presented. The master's report contains another statement which is rather significant. The last grammatical paragraph before the recommendation says, "It would appear entirely fair to state that at least *some substantial* case should be stated and made in *requesting a Bankruptcy Court to surrender to another court (in this case the District Court) its jurisdiction over a debtor or its property.*" (Our emphasis.) This statement of the master in his report, which was approved by the court, indicates clearly that the master believed that the "cause of action" if any, asserted by plaintiffs in their complaint, was an asset or property of the debtor, and that the petition for leave to make the debtor a party to the civil action, which was before him for consideration, was, in effect, a request on the part of plaintiffs, for the "bankruptcy court to surrender to another court (in this instance the District Court) its jurisdiction over the debtor or its property." This request was denied by the bankruptcy court, as shown by its order denying plaintiffs' petition. It is, therefore, apparent that the bankruptcy court considered the "cause of action" if any, asserted in plaintiffs' complaint to be an asset of the debtor and, by its order, it refused to surrender to the District Court its jurisdiction over debtor or its property. The fact that the New York Bondholders Committee filed a memorandum in the proceeding in the bankruptcy court in which it stated, in effect, that the civil action, Cause No. 19982, was not for the benefit of the debtor nor against the debtor, does not alter nor change the situation. The bankruptcy court and the master had before them such memorandum and, evidently, gave it consideration in arriving at their conclusion. The order of the bankruptcy court cannot be so construed as to give plaintiffs authority to maintain this action.

A trustee in bankruptcy, or a debtor in possession under Section 77B of the Bankruptcy Act, has title to all the assets of the bankrupt or debtor, and represents all the creditors. It is his or its right to prosecute all causes of action which could have been prosecuted by the bankrupt or debtor, had bankruptcy not intervened. It is the contention of plaintiffs that the fact that the debtor has failed to prosecute the cause of action asserted in their complaint, is, in effect, an abandonment of such cause of action and that, therefore, they have a right to maintain this action. The rule seems to be contrary to such contention. It has been held that the failure of a trustee in bankruptcy to institute proceedings to recover property or assets of a bankrupt gives no right to the creditors to institute such proceedings. Remington on Bankruptcy, § 1236. If the creditors have information of a cause of action, it is their duty to bring it to the attention of the trustee or debtor in possession, and if he or it fails to institute proceedings thereunder, and they feel that proceedings should be instituted, they have the right to present the question to the court having jurisdiction over the assets of the bankrupt and ask leave to prosecute the action for and in the name of the trustee or debtor, as the case may be. The mere fact that the debtor fails to institute such proceedings does not authorize them to proceed in their own names and upon their own behalf. "After the appointment and qualification of the trustee, suits may not be instituted by creditors to recover or protect assets for the estate, except in the trustee's name and when the court has authorized such action, upon the trustee's failing to act. It is the general rule that after the appointment of the trustee all actions and proceedings for the recovery of property alleged to belong to the bankrupt estate, must be brought by the trustee or in his name." Remington on Bankruptcy, § 2222. Creditors may, however, maintain a suit where the trustee refuses or fails to act, provided, such suit must be maintained in the name of the trustee and by order of court. Remington on Bankruptcy, § 2223.

In the case of Moyer v. Dewey, 103 U.S. 301, 26 L.Ed. 394, the court, in substance, said that the right to sue for and subject to the payment of his debts, effects fraudulently transferred by a party who was subsequently adjudicated a bankrupt, is vested alone in his assignees, and their failure to

518

enforce it within the time prescribed by the bankrupt law does not transfer that right to his creditors. In Loveland on Bankruptcy, 2d Ed., § 158, it is said, "The negligence or refusal of a trustee to bring a suit to set aside such a conveyance is not sufficient to enable a creditor to maintain a suit in his own name." See, also, Glenny v. Langdon, 98 U.S. 20, 25 L.Ed. 43; Trimble v. Woodhead, 102 U.S. 647, 26 L.Ed. 290.

 It is the object and purpose of the bankruptcy law to administer the estate of the bankrupt in a fair and orderly manner and to distribute its assets or property of every kind among its creditors. This can only be done by charging the responsibility of such administration and distribution to one person, and that is the trustee or debtor in possession. If it were otherwise, confusion would exist, preferences be shown, and equal distribution made impossible. In the case of Ruhl-Koblegard Company v. Gillespie et al., 61 W.Va. 584, 56 S.E. 898, 900, 10 L.R.A.,N.S., 305, 11 Ann.Cas. 929, the court said, "The primary object of the bankrupt law is to secure the eqaul distribution of the property of the bankrupt of every kind among his creditors. This can only be done through the rights vested in the assignee and by the faithful discharge of his duties." The failure of the debtor to assert a cause of action against defendants in this case is not sufficient to authorize this court to hold that the action has been abandoned and that, therefore, these plaintiffs have a right to maintain it. In any event, such action would have to be maintained in the name of the debtor under authority granted by the bankruptcy court in which the reorganization proceeding is pending, and that has not been done in this case.

 It is really difficult to visualize the confusion that would exist if these plaintiffs were permitted to maintain this action. In their complaint they pray for the appointment of a receiver "during the pendency of this cause to take charge of all of the property belonging to the trust estate and * * * upon recovery of the assets, due notice be given to all creditors for the purpose of filing claims with the receiver, so that proper distribution may be made after paying the costs of these proceedings and costs of administration." The creditors have already filed their claims with the bankruptcy court and had the same allowed. This court has no knowledge of the extent of their claims, except the complaint alleges that "plaintiffs are general creditors of the Terminals Company, whose claims aggregate in excess of $25,000,000.00." It is not believed that this court has authority to classify creditors and distribute the proceeds of any recovery among a special class, as desired by plaintiffs. The bankruptcy court is the proper tribunal to classify all creditors and to make distribution of the assets of an estate being administered by it among such creditors as classified. It is inconceivable that this court has authority to review the finding of the bankruptcy court as to the classification of creditors, yet, that would be the effect if these plaintiffs were permitted to maintain this action, recover a judgment, realize upon such judgment, and this court make distribution among the special class, as prayed. This would lead to endless confusion, and such proceedings were never contemplated by the Bankruptcy Act. To avoid such confusion, the bankruptcy court is given exclusive jurisdiction over all its assets wherever found, and to make distribution thereof as it directs. Certainly an accounting cannot be required between the bankruptcy court administering the trust estate and this court as to any fund that might be recovered in this action, yet, that would result, if this court is permitted to administer a part of a trust estate which is being administered by a bankruptcy court. This court cannot collect and distribute funds which are assets of a bankrupt estate. That function rests solely with the bankruptcy court administering the estate.

It is clear that any cause of action that may exist because of the alleged acts of the defendants of which plaintiffs complain, belongs to the debtor and can be asserted and maintained only by it. Such cause of action is under the exclusive jurisdiction of the bankruptcy court.

The motion to dismiss should be sustained, and an order will be entered accordingly.