**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 78-2-00315.**

United States Court of International Trade.

Sept. 16, 1981.

Wayne Jarvis, Ltd., Chicago, Ill. (Wayne Jarvis and Michael G. Hodes, Chicago, Ill., on the briefs), for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Saul Davis, New York City, on the briefs), for defendant.

MALETZ, Judge:

This is an action contesting the denial of protests which were filed under section 514 of the Tariff Act of 1930, as amended (19 U.S.C. § 1514). Plaintiff, St. Paul Fire and Marine Insurance Company (St. Paul), is the surety for Universal Trade Corporation (Universal) and World Mint Corp. (World), the importers of record for the entries involved.

The entries were liquidated on June 18, 1975 and October 7, 1975, and St. Paul as surety paid the duties assessed by Customs. On August 29, 1975 and November 21, 1975, W. J. Byrnes & Co. (Byrnes), a licensed customs house broker, filed protests challenging the assessments.

Prior to the filing of these protests, Universal had been adjudicated bankrupt on November 11, 1974 and World had been adjudicated bankrupt on April 28, 1975. A trustee in bankruptcy had been appointed for each.

The protests were denied by Customs on August 26, 1977 and November 18, 1977. The present suit followed.

Defendant has moved to dismiss on the ground that (1) the protests upon which the action is based are not valid because of Universal's and World's bankruptcy; and (2) St. Paul has no standing to maintain this action.

Initially, the parties disagree as to the firms on whose behalf the protests were filed. Plaintiff maintains that Byrnes filed the protests as agent for Universal and World, while defendant argues that Byrnes filed the protests as agent for St. Paul. However, it is unnecessary to resolve this particular dispute. For given the bankrupt status of Universal and World, it is concluded, for the reasons that follow, that irrespective of whether Byrnes acted as agent for Universal and World, or as agent for St. Paul, it lacked any authority to file the protests involved here.

At the outset, it is fundamental that an agent's authority to file a valid protest is coterminous with that of its principal. See, e. g., *United States v. Manny*, 463 F.Supp. 444, 447 (S.D.N.Y. 1978); *Restatement of Agency* (2d), § 7, Comment a (1957). Thus, accepting plaintiff's position that the protests were filed by Byrnes as agent for Universal and World, Byrnes could not have filed valid protests on behalf of those firms unless they themselves could have filed valid protests.

Similarly, accepting the government's position that the protests were filed by Byrnes as agent for St. Paul, we again must consider whether Universal and World had authority to file the protests. This is because in 1975, when the protests were filed, if St. Paul had any authority to file these protests it would have been as agent for World and Universal.[1] And as agent, St. Paul's capacity to file the protests would have been no greater than that of Universal and World.

---

1. At the time the protests were filed, section 514 of the Tariff Act of 1930, as amended, provided that "protests may be filed by the importer, consignee, or any *authorized agent* of the person paying any charge or exaction .…" [Emphasis added.] The Trade Agreements Act of 1979, which gave sureties standing to file protests in their own right (93 Stat. 305) does not retroactively apply to the protests here. See P.L. 96–39 § 1002, 93 Stat. 307.

Additionally, even assuming that St. Paul, as surety, was subrogated to Universal's and World's claim for the refund of customs duties (see *St. Paul Fire & Marine Insurance Co. v. United States*, 370 F.2d 870, 873 (5th Cir. 1967) and *American Surety Co. v. Morton*, 22 F.R.D. 261, 263 (E.D. Ill. 1958)), St. Paul merely stepped into the shoes of Universal and World and only acquired whatever rights to the refund of duties those firms had. *Community Nat. Bank v. Fidelity & Deposit Co.*, 563 F.2d 1319, 1323 (9th Cir. 1977); *Hartford Acc. & Indem. Co. v. First Nat. Bank & Trust Co. of Tulsa, Okl.*, 287 F.2d 69 (10th Cir. 1961).

Against this background, what must be decided is whether Universal and World had the capacity to file the protests involved here. As noted earlier, both of these firms were adjudicated bankrupt prior to the filing of the protests.

Here the government's claims for customs duties arose with the entries of the imported merchandise. *Zenith Radio Corp. v. United States*, 1 CIT ——, ——, 509 F.Supp. 1282, 1286 (1981). These claims were provable against the bankrupts' estates and payable by the trustees in bankruptcy. *In Re Dolard*, 519 F.2d 282, 285 (9th Cir. 1975); *In Re Rosenthal Bros.*, 235 F. 315 (S.D.N.Y. 1916). Given this circumstance, the payment of duties by St. Paul did not constitute an asset acquired by, or subject to being reclaimed by, the bankrupts. Rather, the payment of duties by St. Paul in the first instance inured to the benefit of the estates in bankruptcy.

Thus, the initial obligation for payment of the duties was "rooted in the prebankruptcy past" and as in the case of a tax refund any claim for refund of those duties vested in the trustees in bankruptcy. *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). What St. Paul acquired by payment of the duties was a claim against the bankrupts' estates. *Standard Oil Co. v. Kurtz*, 330 F.2d 178, 185 (8th Cir. 1964). And the trustees of those estates had an interest in limiting that claim by filing appropriate protests. To divest the trustees of that authority by finding that it is held by other parties would frustrate the trustees in protecting the assets of the estates. *Gochenour v. George & Francis Ball Foundation*, 35 F.Supp. 508, 517–18 (S.D. Ind. 1940), *aff'd*, 117 F.2d 259 (7th Cir. 1941), *cert. denied*, 313 U.S. 566, 61 S.Ct. 942, 85 L.Ed. 1525 (1941).

■ Considering that any claim for the refund of duties had vested in the trustees in bankruptcy, only they, and not the bankrupts, could properly pursue the claims by filing the protests. *Burkett v. Shell Oil Company*, 448 F.2d 59 (5th Cir. 1971); *Dallas Cabana, Inc. v. Hyatt Corporation*, 441 F.2d 865 (5th Cir. 1971); *Taylor v. Swirnow*, 80 F.R.D. 79, 82 (D.Md.1978). And the fact that a trustee fails to assert a claim does not mean that title to the claim reverts to the bankrupt. Rather, in such a case, the bankrupt must petition the bankruptcy court for an order compelling the trustee to proceed or authorizing the bankrupt to do so. *Dallas Cabana, supra.*

■ Similarly, a creditor of the bankrupt may not pursue a claim because of the failure of the trustee in bankruptcy to proceed. As in the case of the bankrupt, the creditor may petition the bankruptcy court for leave to pursue the claim in the name of the trustee. *Gochenour v. George & Francis Ball Foundation, supra*, 35 F.Supp. at 517. Here, although St. Paul was a creditor of the bankrupt corporations by virtue of its payment of the duties, it never petitioned the bankruptcy court for an order directing the trustees to file a protest or permitting St. Paul to do so itself.

■ In short, in view of the fact that any claim for the refund of duties vested in the trustees in bankruptcy and never passed to either the bankrupts or any of the bankrupts' creditors, the court concludes that regardless of whether Byrnes was acting as an agent for Universal and World, or as an agent for St. Paul, it lacked any authority to file the protests involved here. See *Restatement of Agency* (2d), *supra*, § 124(b) and comments. See, also, *Lewis Sagal & Co. v. Smith*, 35 F.2d 182, 183 (3d Cir. 1929).

It is of course basic that a prerequisite to maintaining the present action was the filing of a valid protest. Here the protests were not filed by the trustees in bankruptcy who were the only parties with authority to file them. Accordingly, the protests filed by Byrnes were invalid and the action is hereby dismissed.[2]

---

**2.** In view of this disposition of the case, it is unnecessary to reach defendant's contention that St. Paul lacks standing to maintain the action.