Slip Op. 04 - 73

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| LINCOLN GENERAL INSURANCE CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| UNITED STATES, | : | Court No. 03-00546 |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| FRESH GARLIC PRODUCERS ASS'N, | : | |
| CHRISTOPHER RANCH, L.L.C., FARM GATE, | : | |
| L.L.C., THE GARLIC CO., VALLEY GARLIC, | : | |
| and VESSEY AND CO., | : | |
| | : | |
| Defendant-Intervenors. | : | |

[On challenge by surety to decision of U.S. Department of Commerce to rescind administrative review of a new producer or exporter, defendant's motion to dismiss for lack of subject matter jurisdiction and standing denied.]

Dated: June 18, 2004

*Sandler, Travis & Rosenberg, P.A.* (*T. Randolph Ferguson*, *Philip S. Gallas*, *Mark R. Ludwikowski*, and *Arthur Purcell*), for the plaintiff.

*Peter D. Kessler*, Assistant Attorney General; *David M. Cohen*, Director, *Jeanne E. Davidson*, Assistant Director, Civil Division, Commercial Litigation Branch, United States Department of Justice, (*Stephan Shaibani*); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Scott D. McBride*), of counsel, for the defendant.

*Collier Shannon Scott* (*Michael J. Coursey* and *John M. Herrmann*), for the defendant-intervenors.

**OPINION**

Lincoln General Insurance Company ("Lincoln") is a surety on bonds for certain importers which entered garlic into the United States from the People's Republic of China ("PRC") subject to *Antidumping Duty Order: Fresh Garlic From the People's Republic of China*, 59 Fed. Reg. 59209 (Nov. 16, 1994). Invoking the jurisdiction of this Court under 28 U.S.C. § 1581(c) or § 1581(i), Lincoln seeks vacatur and remand of the final decision of the International Trade Administration of the U.S. Department of Commerce ("Commerce") to rescind the first administrative review of Huaiyang Hongda Dehydrated Vegetable Company ("Hongda"). The government challenges subject matter jurisdiction and Lincoln's standing to bring this action. For the reasons herein, the Court finds subject matter jurisdiction under 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. §§ 1581(c) and standing in Lincoln to assert the claims of its affected bonded importers under 28 U.S.C. §§ 2631(c). Consequently, the Court does not reach the jurisdictional issues argued with respect to 28 U.S.C. §§ 1581(i) and 2631(i).

*Background*

The new shipper review of fresh garlic from the PRC produced or exported by Hongda covered the period November 1, 2001 through April 30, 2002 and was initiated on June 26, 2002. *See Fresh Garlic from the People's Republic of China: Rescission of New Shipper Antidumping Review and Initiation of New Shipper Antidumping Duty Review*, 67 Fed. Reg. 44594 (July 3, 2002). Commerce then announced the opportunity for interested parties to request an administrative review of the antidumping order for the twelve-month period November 1, 2001 to October 31, 2002. *Antidumping or Countervailing Duty Order, Finding or Suspended Investigation: Opportunity to*

*Request Administrative Review*, 67 Fed. Reg. 66612 (Nov. 1, 2002). The U.S. petitioners, defendant-intervenors herein, requested administrative review of Hongda. The initiated administrative review was to cover Hongda's shipments of fresh garlic from the PRC for the period May 1, 2002 through October 31, 2002. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 67 Fed. Reg. 78772 (Dec. 26, 2002). On April 28, 2003, the petitioners submitted a letter to Commerce withdrawing their request for administrative review of Hongda. Subsequently, on June 19, 2003, Commerce published *Fresh Garlic From the People's Republic of China: Final Results of Antidumping Duty New Shipper Review*, 68 Fed. Reg. 36767 (June 19, 2003), which determined a dumping margin for Hongda for the November 1, 2001 to March 31, 2002 period of 367.76 percent based on adverse facts available.

Lincoln asserts that it "participated" in the administrative review on behalf of itself and/or on behalf of the importers it bonded. On July 24, 2003, Hongda and, on behalf of several importers, Lincoln filed appearances through their respective counsels and thereafter met with ITA officials to urge Commerce to continue the administrative review of Hongda. Hongda and Lincoln informed Commerce that U.S. sureties had uncovered two fraudulent schemes that had been used to evade antidumping duties on imports of Chinese agricultural products and that these schemes particularly implicated Hongda's customs and potential antidumping duty liabilities. Hongda and Lincoln indicated that a continuation of Hongda's administrative review afforded Commerce the opportunity to identify legitimate and illegitimate garlic shipments, develop solutions for curtailing the fraudulent abuse of its antidumping reviews with respect to China, and resurrect public confidence in the proper administration of Chinese agricultural imports.

On July 29, 2003, Hongda and, on behalf of several importers, Lincoln submitted comments in opposition to Commerce's potential rescission of the first administrative review of Hongda. Hongda and Lincoln reiterated to Commerce that Hongda was the victim of identity theft and concomitant fraudulent schemes during the period of its administrative review. Accordingly, Hongda and Lincoln requested that Commerce continue Hongda's review to uncover additional information about the fraudulent schemes which were used to avoid payment of antidumping duties and to determine which imports under Hongda's name were legitimate.

On August 6, 2003, Commerce published notice in the Federal Register rescinding Hongda's administrative review. *See Fresh Garlic From the People's Republic of China: Partial Rescission of Antidumping Duty Administrative Review*, 68 Fed. Reg. 46580 (Aug. 6, 2003). Commerce considered that fraudulent import practices are rather the concern of the Bureau of Immigration and Customs Enforcement (*i.e.*, irrelevant to administrative review of the antidumping duty order), and reasoned that rescission was appropriate because the petitioners had withdrawn their request and Hongda itself had not made one. The next day, August 7, 2003, Commerce published a notice in the Federal Register extending until October 31, 2003 the deadline for its preliminary results in the administrative review in which Hongda was a respondent prior to Commerce's decision a day earlier. *See Fresh Garlic From the People's Republic of China: Notice of Extension of Time Limit for the Preliminary Results of Antidumping Duty Administrative and New Shipper Reviews*, 68 Fed. Reg. 47020 (Aug. 7, 2003).

After filing this action, Lincoln moved for a preliminary injunction to enjoin the Bureau of Customs and Border Protection from liquidating any unliquidated entries for which Hongda was

listed as the manufacturer or exporter, and the government filed its motion to dismiss for lack of subject matter jurisdiction. Argument on the motions was heard December 16, 2003, at which it was adduced that a preliminary injunction had been granted in the matter of *Huaiyang Hongda Dehydrated Vegetable Company v. United States*, Court No. 03-00636, which afforded sufficient preservation of Lincoln's claims for the time being. The government's motion was taken under advisement.

The parties were subsequently ordered to show cause why the matter should not be stayed pending the outcome of Court No. 03-00636. Their responses indicate a preference for immediate resolution of the jurisdictional issue. The government's response opposes a stay on the argument that it would be tantamount to an assertion of jurisdiction, and it also moves to strike a certain attachment[1] to Lincoln's brief in response to the order to show cause as irrelevant. Lincoln suggests that the proper posture would be for expedited resolution of the jurisdictional issue and then

---

[1] The attachment is a letter from Commerce to counsel for Lincoln rejecting counsel's November 26, 2003 request to Commerce "on behalf of" Lincoln and Aegis Security Insurance Company for administrative review of the twelve-month period November 1, 2002 to October 31, 2003 on the ground that Lincoln and Aegis are surety companies which "do not meet the requirements" of 19 U.S.C. § 1677(9) interested parties. On the other hand,

> The Act provides that importers are interested parties, and you have indicated that Lincoln and Aegis are sureties for the importers Y&L Enterprises, Inc. and Ming Fa Group. If either of these importers had requested an administrative review by the deadline of November 30, 2003, the Department would have considered these requests. However, your letters expressly state that Lincoln and Aegis are requesting the reviews, not their importer customers. Thus, we will not initiate an administrative review based upon your requests.

Pl.'s Resp. to Order to Show Cause, Ex. A.

consolidation with Court No. 03-00636, and it also contends the attachment to its response brief is "directly relevant to the instant case." Pl.'s Resp. to Order to Show Cause, n.1.

### *Discussion*

Although the letter from Commerce attached to Lincoln's response to the order to show cause relates to the subsequent administrative review, the Court considers the attachment within the realm of Lincoln's permissible argument and indicative of Commerce's position with respect to the issues presented here. The government's motion to strike is therefore denied.

The overarching question implicated by the government's motion to dismiss is whether a surety on a customs entry bond has access to the same administrative and judicial remedies available to its principal on the bond, a United States importer. The burden of establishing jurisdiction lies with Lincoln as the party seeking to invoke this Court's jurisdiction. *See*, *e.g.*, *Old Republic Ins. Co. v. United States*, 14 CIT 377, 379, 741 F. Supp. 1570, 1573 (1990) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785 (1936)).[2]

Since the United States is immune from suit unless it consents to be sued, *e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351 (1980), waiver of sovereign immunity "must be unequivocally expressed" in the jurisdictional statute, and it is to be "strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096 (1996). For purposes of the imposition and administration of countervailing and antidumping duties under

---

[2] Irrespective of the parties' representations, however, a court must also always determine whether its jurisdiction is proper. *See*, *e.g.*, *USEC Inc. v. United States*, 27 CIT ___, ___, 259 F. Supp. 2d 1310, 1329-1330 (2003); *Elkam Metals Co. v. United States*, 23 CIT 170, 175, 44 F. Supp. 2d 288, 292 (1999); *Brecoflex Co. v. United States*, 23 CIT 84, 86, 44 F. Supp. 2d 225, 228 (1999); *Zenith Radio Corp. v. United States*, 5 CIT 155, 156 (1983) (agency's decision with respect to participation in administrative proceeding irrelevant to question of standing).

subtitle IV of the Tariff Act of 1930, as amended, the United States' explicit waiver of sovereign immunity is contained in 28 U.S.C. § 1581 (2002).

28 U.S.C. § 1581(c) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930." Section 516A, codified at 19 U.S.C. § 1516a, encompasses the type of determination about which Lincoln complains. *See* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), 1516a(a)(2)(a)(2)(B). In order to bring an action to contest such matters before this Court, a plaintiff must demonstrate that it is both an "interested party" and "a party to the proceeding in connection with which the matter arose." 28 U.S.C. § 2631(c). *See* 19 U.S.C. § 1516a(d) ("Any interested party who was a party to the proceeding under . . . subtitle IV of this chapter shall have the right to appear and be heard as a party in interest before the United States Court of International Trade."). Conversely, only an "interested party" may participate before Commerce in the antidumping and countervailing proceedings encompassed by section 516A of the Tariff Act of 1930. *See JCM, Ltd. v. United States*, 210 F.3d 1357, 1360 (Fed. Cir. 2000).

"Interested party" is defined by statute to include *inter alia* "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise[.]" 19 U.S.C. § 1677(9)(A). Commerce's regulations define "importer" as "the person by whom, or for whose account, subject merchandise is imported[.]" They define "person," in turn (and circularly in part), as including "any interested party as well as any other individual, enterprise, or entity, as appropriate." 19 C.F.R. § 351.102.

Lincoln asserts that it is both an interested party and a party to the contested proceeding, and that jurisdiction here is appropriate under 28 U.S.C. § 1581(c). Jurisdiction under 1581(c) is proper, Lincoln asserts, because the surety's ability to "stand in the shoes" of its importer-principal is a well-recognized principle in customs law. *See, e.g., Fidelity and Casualty Co. of New York v. United States*, 28 Cust. Ct. 103, 107, C.D. 1394 (1952) (the surety "is subrogated to such rights and remedies, as the principal has in connection with the debt, which will afford him a means of reimbursement") (quoting 60 *Corpus Juris* at 771). *Cf. St. Paul Fire and Marine Ins. Co. v. United States*, 2 CIT 104, 525 F. Supp. 880 (1981) (surety's ability to "stand in shoes" of importer is a general creditor's claim against bankrupt's estate). In *Fidelity*, a surety on a single consumption entry bond was held to be a proper party to file a petition for remission of additional duties under 19 U.S.C. § 1489. The court found that a surety has all the rights and remedies that are available to the principal on an import bond, and the failure of Congress to identify the surety specifically in the underlying statute as a party entitled to protest or petition the assessment of additional duties or liquidated damages was not an impediment to the surety's right to seek administrative and judicial relief granted to the principal/importer under the statute and its attendant regulations. Nor did the court find payment of the debt by the surety to be a pre-requisite to standing for the surety to avail itself of the administrative and judicial remedies available to the principal on the bond; indeed, the case note states that the right of the surety to avail itself of remedies available to the principal is "especially true" where the surety is shown to have paid the amounts which included the additional duties in controversy. 28 Cust. Ct. at 103. By contrast, Lincoln notes, no "interested party" is required to tender duties as a condition of challenging the ITA's findings under § 1581(c). Lincoln

thus argues that when a surety stands in the shoes of the importer, it may assert the claims of the importer as an "interested party" within the meaning of § 1677(9), and thus has the right to participate and comment in antidumping and countervailing duty proceedings before Commerce. Further, Lincoln asserts, it was a "party to the proceeding" consistent with 28 U.S.C. § 2631(c) because it filed comments to Commerce "on behalf of" importers seeking to draw Commerce's attention to the fraudulent schemes that were causing injury to the liability of the importers (and itself).

The government acknowledges that Lincoln apprized Commerce of "two fraudulent import schemes used to avoid antidumping (AD) duties[,]"[3] but takes the position that since a surety is not specifically mentioned in § 1677(9) as an "interested party" Lincoln therefore could not participate as one in the antidumping proceeding and therefore does not have standing to bring suit here.  *Cf.* 19 U.S.C. §§ 1516a(a), 1516a(d), 1516a(f)(3), 1677(9)(A).   The government argues that the instant matter is analogous to the numerous cases denying interested-party status to entities seeking redress or protection of domestic or tangential interests.  *See*, *e.g.*, *Bhullar v. United States*, 27 CIT ___, ___, 259 F. Supp. 2d 1332, 1339-43 (2003) (section 1677(9) does not list "shareholder" as "interested party"); *Save Domestic Oil, Inc. v. United States*, 26 CIT ___, ___, 240 F. Supp. 2d 1342, 1345 (2002) (association's majority not regional crude oil producers, therefore not an "interested party"); *Brother Industries (USA), Inc. v. United States,* 16 CIT 789, 793-94, 801 F. Supp. 751, 757 (1992) (legislative history of "interested party" contrasts industries suffering adverse affects with those having no stake and, *ergo*, no injury); *NTN Bearing Corp of America v. United States*, 15 CIT 75,

---

[3] Def's Br. at 6, quoting Pl.'s Comments at 3.

78, 757 F. Supp. 1425, 1428 (1991) (reiterating *Gilmore*); *Gilmore Steel Corp. v. United States*, 7 CIT 219, 226, 585 F. Supp. 670, 676 (1984) (to be "interested party" petitioner must be member of affected industry and petition must be backed by majority of that industry); *Matsushita Electric Industrial Co. v. United States*, 2 CIT 254, 256-57, 529 F. Supp. 664, 667-68 (1981) (importers' committee and manufacturers of Japanese televisions lacked standing to participate in ITC proceeding). Thus, the government argues, "only entities that are involved in the production, importation or sale of merchandise in an industry adversely affected by dumping" are interested parties. Since "a surety is not involved in the production or sale of merchandise[,]" it therefore has "no stake in the result" of the administrative proceeding, according to the government. Def's Br. at 12-13 (quoting S.REP. No. 96-249, 96th Cong., 1st Sess. 63 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 449). Since Lincoln was not an "interested party," according to the government, it could not have been a "party to the proceeding"[4] as required by 28 U.S.C. § 2631(c). *See JCM, supra*, 210 F.3d 1357 at 1360. And on the related issue, the government characterizes Lincoln's only attempt to "actively participate" in the administrative proceeding as an "eleventh hour" submission which Commerce correctly deemed "inadequate" to render Lincoln a "party to the proceeding." Def's Br. at 16-17. Acceptance of a submission does not equate to active participation, the government argues, because Commerce commonly accepts information and comments from sources which are not interested parties, and Lincoln did not itself claim to be an "interested party" in its comments to

---

[4] Commerce's regulations define "party to the proceeding" as "any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding." 19 C.F.R. § 351.102.

Commerce. *Id*. at 16-17. But, the government acknowledges that the submission was "on behalf of" a group of importers.

In resolving the jurisdictional issues raised, it is instructive to recall that the Trade Agreements Act of 1979 sought to enhance sureties' rights by affording them the ability to file protests independent of their bond principals to the U.S. Customs Service, now the Bureau of Customs and Border Protection, and by extending the period within which such a protest may be filed. *See* 19 U.S.C. § 1514(c)(2)(A); 28 U.S.C. § 2631(a); P.L. 96-39 § 1001(b)(3), 93 Stat. 144, 305 (1979); S.REP. No. 249 at 254, *reprinted in* 1979 U.S.C.C.A.N. at 640; *Old Republic Ins. Co. v. United States*, 10 CIT 1, 625 F. Supp. 983 (1986). *See also United States v. Ataka America, Inc.*, 17 CIT 598, 607 n.12, 826 F. Supp. 495, 501 n.12 (1993). Yet, as surety bearing liability on the affected importers' bonds, Lincoln's "stake" in the outcome of Commerce's proceedings cannot be said to be any less than those of petitioners asserting claims "on behalf of" an affected industry, in which context "the legislative history calls for a liberal construction of the standing requirements." *Brother Industries (USA)*, *supra*, 16 CIT at 794, 801 F. Supp. at 757 (referencing *Citrosuco Paulista, S.A. v. United States*, 12 CIT 1196, 1203, 704 F. Supp. 1075, 1084 (1988)). *See id.* ("The language in the legislative history is broad and unqualified. It contrasts industries suffering *adverse effect* with those having *no stake*: the former have standing; the latter do not.") (emphasis in original). "Strictly" construed,[5] such construction applies to *all* "interested parties," of course.

---

[5] *See Lane v. Pena*, *supra*, 518 U.S. at 192, 116 S.Ct. at 2096.

All of the parties alleging "interested party" status in the government's referenced cases appear to have had only tangential interests in the underlying subject matter.[6] Here, the government does not dispute that each of the importers bonded to Lincoln would be an "interested party" under § 1677(9) with a stake in the administrative proceeding and the right to participate in the administrative proceedings and bring this judicial challenge, and it has not offered a plausible reason for distinguishing the surety's well-recognized rights of subrogation as applicable to claims only before Customs and not Commerce. Lincoln's status as surety with joint and several liability under the importers' bonds confers upon it the legal and contractual right to assert the same claims and defenses as those principals. *See* Arthur A. Stearns, THE LAW OF SURETYSHIP § 7.1 (James L. Elder, ed., 5th ed. 1951). *Cf.* 19 U.S.C. § 1514(c)(2)(A). Plainly, the surety's right to "stand in the shoes" of its importer-principal applies equally to all matters of international trade, including the administration of antidumping and countervailing duty measures, where the sure impact on its contractual bond liability for import duties bestows the surety with "such rights and remedies[ ] as the principal has in connection with the debt[.]" *Cf. Fidelity, supra*; 73 Am. Jur. 2d, Subrogation

---

[6] *Matsushita*, for example, appears to be the nearest case supporting the government's position; however, it is distinguishable because the "importers" in question were the Imports Committee, Tube Division, of the Electronic Industries Association, which presented itself in the motion to intervene "as an association of manufacturers in the United States television industry." The Court's rationale for denying intervention as of right to that committee was based on the fact that of the five companies represented by that Committee, only one had ever "manufactured" television sets but had sold its production facility prior to the administrative determination that was the subject of the case. "Even if [the one] were to be considered a manufacturer of television set, the Imports Committee still does not have a majority of members who manufacture a like product." 2 CIT at 257, 529 F. Supp. at 668. In other words, pursuant to that committee's representation with respect to its own posture in the matter, the committee fell short of being "a trade or business association a majority of whose members manufacture, produce, or wholesale a like product in the United States." *See* 19 U.S.C. § 1677(9) (italics added). *Cf. Zenith Radio, supra*, 5 CIT 155.

§§ 1, 23 ("where special circumstances exist equity will allow subrogation where a liability only, and not a payment, is shown").  Since the importers chose not to assert their claims to Commerce, Lincoln, as surety, may therefore do so on their behalf.

### *Conclusion*

As surety, Lincoln acquires the legal and contractual rights of its bond principals, in this instance certain U.S. importers, including their administrative and judicial rights as "interested parties," 19 U.S.C. § 1677(9), to appear and participate in antidumping and countervailing duty proceedings having a potential impact upon them.  The Court finds subject matter jurisdiction over this matter in 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and § 1516a(a)(2)(B)(iii) and in 28 U.S.C. § 1581(c). Further, in accordance with the foregoing, Lincoln has standing to bring this action.  *See* 28 U.S.C. § 2631(c). The government's motion to dismiss is therefore denied.

    /s/  R. Kenton Musgrave
         R. KENTON MUSGRAVE, JUDGE

Dated: June 18, 2004
       New York, New York

# ERRATA

*Lincoln General Insurance Co. v. United States*, Court No. 03-00546, Slip Op. 04-73, dated June 18, 2004:

Page 1 –  Remove Philip S. Gallas and Mark R. Ludwikowski from the list of attorneys for the plaintiff.

June 21, 2004