Slip Op.  05 - 162

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  | : |  |
|---|---|---|
| LINCOLN GENERAL INSURANCE CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| UNITED STATES, | : | Court No. 03-00546 |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| FRESH GARLIC PRODUCERS ASS'N, | : | |
| CHRISTOPHER RANCH, L.L.C., FARM GATE, | : | |
| L.L.C., THE GARLIC CO., VALLEY GARLIC, | : | |
| and VESSEY AND CO., | : | |
| | : | |
| Defendant-Intervenors. | : | |
| | : | |

[On a challenge by surety on import bonds to decision of U.S. Department of Commerce to rescind administrative review of a manufacturer, producer or exporter from the People's Republic of China, judgment for the defendant.]

Decided: December 22, 2005

*Sandler, Travis & Rosenberg, P.A.* (*T. Randolph Ferguson* and *Arthur Purcell*), for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, Civil Division, Commercial Litigation Branch, United States Department of Justice, (*Mark T. Pittman*); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Peter J.S. Kaldes*), of counsel, for the defendant.

*Collier Shannon Scott* (*Michael J. Coursey* and *John M. Herrmann*), for the defendant-intervenors.

**OPINION**

This opinion addresses the merits of a challenge brought by plaintiff Lincoln General Insurance Company ("Lincoln") to the rescission of Hongda Dehydrated Vegetable Company ("Hongda"), a manufacturer, producer or exporter ("MPE") of the People's Republic of China ("PRC"), from an administrative review of *Antidumping Duty Order: Fresh Garlic From the People's Republic of China*, 59 Fed. Reg. 59209 (Nov. 16, 1994).[1] The essential question on this review of an administrative record is whether the rescission, by the Department of Commerce, International Trade Administration ("Commerce"), was lawful despite Lincoln's urging that the administrative review be continued in light of the allegation that Hongda had been victimized by a massive import fraud scheme involving the identity theft (pirating) of Hongda's name and export number by certain unknown named entities.

Previously, the Court concluded that jurisdiction over this matter is proper pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (a)(2)(B)(iii), and 28 U.S.C. § 1581(c). *See Lincoln General Insurance Co. v. United States*, 28 CIT ___, Slip Op. 04-73, 341 F.Supp.2d 1265 (2004). At this stage, Lincoln moves for USCIT Rule 56.2 judgment arguing that Commerce's decision is unsupported by substantial evidence and is not in accordance with law, and it seeks vacatur of the rescission and remand for further proceedings. As was the case with Hongda, the Court is not unsympathetic to Lincoln's predicament; however, it is constrained to deny the motion and enter judgment for the defendant.

---

[1] "The clove with clout," as the *Miami News* dubbed it, makes eminently more sense of scents in the context of the order.

### *Background*

Some familiarity with the underlying facts is presumed. *See id.* When the opportunity presented itself, the petitioners requested an administrative review of Hongda. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 67 Fed. Reg. 66612 (Nov. 1, 2002); *see also* 19 C.F.R. § 351.213(b). They were the only interested party to do so. Apparently, when it subsequently became clear that Hongda's new shipper review would likely[2] result in application against Hongda of the country-wide 376.67% antidumping duty rate (which has been imposed on entries of fresh garlic from all MPEs of the PRC since 1994), the petitioners immediately requested to withdraw their request for administrative review of Hongda on April 28, 2003. Public Record Document ("PR") 61. *See Fresh Garlic from the People's Republic of China: Partial Rescission of Antidumping Duty Administrative Review*, 68 Fed. Reg. 46580, 46581 (Aug. 6, 2003).

About eleven weeks later, Lincoln and Hongda argued to Commerce that they had uncovered a "massive" garlic import fraud scheme involving the identity theft of Hongda's name and export number, and that it was therefore in the public interest to continue the administrative review in order to shed light on the scheme and develop solutions for curtailing the fraudulent abuse of U.S. antidumping law with respect to PRC MPEs and resurrect public confidence in the proper administration of PRC agricultural products. *See*, *e.g.*, PR 112, PR 114.

Considering the arguments for and against rescission of the administrative review, Commerce observed as follows:

---

[2] *See Fresh Garlic from the People's Republic of China: Preliminary Results of Antidumping Duty New Shipper Review*, 68 Fed. Reg. 22676 (April 29, 2003).

With respect to the petitioners' withdrawal of their review request for Hongda, Golden Light, Good Fate, Phil-Sino, and Mai Xuan, although the petitioners withdrew their review request for these five companies after the 90-day deadline, the Department's regulations at 19 CFR 351.213(d)(1) permit an extension of the deadline if "it is reasonable to do so." We have not committed significant resources to date to the review of Hongda, Golden Light, Good Fate, Phil-Sino, and Mai Xuan. Furthermore, the petitioners were the only party to request an administrative review of these companies.

We have received no submissions opposing the withdrawal of the petitioners' requests as they pertain to Golden Light, Good Fate, Phil-Sino, and Mai Xuan. Although Hongda and several importers expressed concerns pertaining to the rescission of the administrative review of Hongda, the arguments they presented pertain to allegations involving fraud. The investigation of alleged fraudulent activities is within the statutory purview of the Bureau of Immigration and Customs Enforcement (ICE). *See* 19 USC 1592. Thus, we will refer Hongda's and the importers' allegations of inappropriate conduct to ICE.

For the above reasons, we determine that it is reasonable to extend the deadline for withdrawal of the requests for review of Hongda, Golden Light, Good Fate, Phil-Sino, and Mai Xuan, and we are rescinding the review of the antidumping duty order on fresh garlic from the PRC with respect to these companies.

68 Fed. Reg. at 46581.

For Hongda, the rescission meant continuation of the new shipper review results. For Lincoln, the rescission implied surety liability of unimagined proportions. This action followed, in which the petitioners joined as defendants-intervenor but without briefing or otherwise participating.

### *Standard of Review*

On an action such as this, the standard of review is to ascertain whether there is substantial evidence on the administrative record to support Commerce's "determination, finding or conclusion" or whether such is "otherwise not in accordance with law." *See* 19 U.S.C. § 1516a(b)(1)(B)(i); 28 U.S.C. § 2640(b). Substantial evidence means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459 (1951); *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938); *accord Matsushita Electric Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). On that basis, the Court must avoid substituting judgment for that of Commerce, since the possibility of drawing a different conclusion from the same record evidence is insufficient to show that the conclusion drawn by the agency is unsupported by substantial record evidence. *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026-27 (1966).

An allegation of abuse of administrative discretion must be considered in the context of the administrative record, in accordance with the substantial evidence standard. *See, e.g.*, *Fujian Machinery and Equipment Import & Export Corp. v. United States*, 25 CIT 1150,1155-56, 178 F.Supp.2d 1305, 1313-14 (2001) (discussing overlap between arbitrary and capricious standard and substantial evidence standard). More precisely, abuse of administrative discretion would be "not otherwise in accordance with law" under 19 U.S.C. § 1516a(b)(1)(B)(i). *Cf. Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ("[a]n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors") (citation omitted; describing abuse in context of Administrative Procedure Act).

### *Discussion*

As this matter and the related case of *Huaiyang Hongda Dehydrated Vegetable Co. v. United States*, 28 CIT ___, Slip. Op. 04-148 (2004) indicate, interested parties may find their respective interests in completing an administrative review influenced by events or discoveries arising during

the course of a proceeding. When U.S. trade law was amended from automatic to voluntary annual

administrative review in 1984, Congress stated that the purpose was "to limit the number of reviews

in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents,

as well as the administering authority." H.R. Conf. Rep. No. 98-1156, 98th Cong., 2nd Sess. at 181

(1984), *reprinted in* 1984 U.S.C.C.A.N. 5220, 5297. *See also Ferro Union, Inc. v. United States*,

23 CIT 178, 181, 44 F.Supp.2d 1310, 1315 (1999) ("Commerce could rightly continue a review in

which there is an expressed interest"). Permitting the subsequent withdrawal of a review request is

premised on the recognition that an interested party may not know whether it had been in its interest

to have requested an administrative review until the prior review had been completed, which might

occur long after an order's anniversary. In order to avoid waste of resources and also prevent abuse

of process through manipulation, Commerce's position has been that it is appropriate to retain

discretion on whether to permit a party to withdraw its request for administrative review beyond 90

days of a review's initiation.[3]   Thus, the current regulation continues to state that once an

---

[3] *See Antidumping Duties; Counterveiling Duties; Final Rule*, 62 Fed. Reg. 27296, 27317 (May 19, 1997):

> [W]e believe that the Department must have the final say concerning rescissions of reviews requested after 90 days in order to prevent abuse of the procedures for requesting and withdrawing a review. For example, we are concerned with the situation in which a party requests a review, the Department devotes considerable time and resources to the review, and then the party withdraws its requests once it ascertains that the results of the review are not likely to be in its favor. To discourage this behavior, the Department must have the ability to deny withdrawals of requests for review, even in situations where no party objects.
>
> Therefore, in §351.213(d)(1), we have retained the 90-day requirement. In addition we have added a new sentence, taken from 19 CFR

(continued...)

administrative review is initiated, upon the request of the requesting party it "will" be rescinded within 90 days of its initiation or thereafter at Commerce's discretion.  19 C.F.R. § 351.213(d)(l). The reasonable exercise of the administering authority's discretion has been upheld in appropriate circumstances, *see, e.g.*, *Cosco Home and Office Products v. United States*, 28 CIT ___, ___, 350 F.Supp.2d 1294, 1296-97 (2004) (affirming rescission of review where the only party to timely request a review of two exporters also withdrew its request), *aff'd* Appeal No. 05-1230, 2005 WL 3161342 (Fed. Cir. Nov. 21, 2005) (unpublished mem.); *Yangcheng Baolong Biochemical Products Co., Ltd. v. United States*, 337 F.3d 1332 (Fed. Cir. 2003) (affirming rescission of review where exporter made no sales to U.S. during period of review), but its reasonable exercise is motivated by reasoned argument, not mere request.  *See* 19 C.F.R. § 351.213(d)(1) ("[t]he Secretary may extend this time limit if the Secretary decides that it is *reasonable* to do so") (italics added).  A party's opposition to rescission must likewise persuade and not merely request if it is to be effective.

I

Here, Lincoln's main contention is that Commerce denied it a "full and fair opportunity to be heard" by applying a double standard to its opposition to rescission versus the petitioners' eleventh-hour withdrawal request, especially since Commerce eviscerated the original deadline for preliminary review of the remaining respondents immediately after rescinding the administrative review with respect to Hongda.   Lincoln argues that it brought the illegitimate Hongda imports to Commerce's attention as soon as they were discovered and that the timing of its appearance was

---

[3] (...continued)
§§353.22(a)(5) and 355.22(a)(3), that essentially provides that if a request for rescission is made after the expiration of the 90-day deadline, the decision to rescind a review will be at the Secretary's discretion.

irrelevant because Commerce still would have refused to accord standing to Lincoln, even if it had been possible to apprize Commerce of the import fraud earlier in the proceeding. Thus, Lincoln argues, Commerce's decision to rescind was a foregone conclusion and precluded a full development of the issues on the record. Since the administrative record is incomplete, according to Lincoln, the appropriate remedy is to vacate the rescission and allow Lincoln the opportunity to present its case before Commerce free from the "stigma of illegitimacy." P's Br. at 7-10.

As a preliminary matter, the government contends that any harm to Lincoln is contingent upon its principals' refusal to pay proper assessments of antidumping duties, and since refusal to pay is speculative at this point, the matter is not ripe for review. Lincoln responds that this matter concerns a challenge to the lawfulness of the decision to rescind administrative review under the circumstances presented, not to antidumping duty liability *per se*. *See* P's Reply at 8.

The Court agrees with Lincoln that on a challenge such as this, 28 U.S.C. § 1581(a), is not the appropriate mechanism to contest a decision to rescind an administrative review. When the Bureau of Customs and Border Protection ("Customs") merely follows Commerce's instructions in assessing and collecting antidumping duties, it does not, thereby, make an "antidumping decision" protestable pursuant to 19 U.S.C. § 1514, which is a necessary precursor for jurisdiction under 28 U.S.C. § 1581(a). *Mitsubishi Electronics America., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994). "Customs must engage in some sort of decision-making process in order for there to be a protestable decision." *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997). Similarly, the residual jurisdiction of subsection 1581(i) would at best permit a challenge to the lawfulness of Commerce's liquidation instructions to Customs but not to the underlying Commerce

decision itself, *see*, *e.g.*, *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003), because it is clear that the complaint implicates a "final determination" that may be contested for purposes of subject matter jurisdiction, *e.g.*, *Yangcheng Baolong*, *supra*, 337 F.3d at 1333-34, and it is well-settled that subsection (i) jurisdiction may not be invoked when jurisdiction under another subsection of section 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate. *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773 (1988). Therefore, to the extent the government's argument further challenges jurisdiction on ripeness grounds, the Court reaffirms that jurisdiction over this action is appropriate under section 1581(c), which jurisdictional provision is not manifestly inadequate to Lincoln's claims. *See* Slip Op. 04-73.

In the related case of *Huaiyang Hongda*, *supra*, the Court concluded that Hongda's late expression of interest in the review's continuance had tipped the balance in Commerce's decision to rescind, and that it had not been an abuse of discretion for Commerce to conclude that the allegation of import fraud involving the identity theft of Hongda's name and export number was an insufficient reason to deny the petitioners' request to withdraw their original administrative review request, since identity theft would not have affected Hongda's participation in the review (or, for that matter, any Hongda data obtained therefor, at least in theory). At oral argument on Lincoln's motion, the Court understood Lincoln to argue only that it was not until issuance of Slip Op. 04-73 that the question of its standing before Commerce was settled, that in consequence of that opinion the administrative decision to rescind was necessarily rendered unlawful, and that it is therefore appropriate to restore the *status quo ante* by vacating the rescission and order reconsideration of

Lincoln's claims. The argument thus advances the contention that the timing of Lincoln's entry into the proceeding was irrelevant because Commerce would have denied it standing regardless. As opposed to *Huaiyang Hongda*, however, the record does not reflect whether the timing of Lincoln's appearance influenced Commerce's decision, and the published decision does not comment upon it. Furthermore, Lincoln's arguments on standing notwithstanding, the record in fact shows that Commerce allowed Lincoln to present its claims in discussions over the telephone, in person, and as filed in Lincoln's subsequent submissions which are part of the administrative record and were not returned to Lincoln. *See* PR 94; PR 112; PR 114. Thus, the government argues that there was no "stigma of illegitimacy" about Lincoln before Commere, and that Commerce properly considered Lincoln's claims and properly observed that the investigation of an allegation of fraudulent import activity is within the statutory purview of Customs. Def's Br. at 12-13 (referencing *id*. & 68 Fed. Reg. at 46581). *See also* 19 U.S.C. § 1592(b) (delegating to Customs the task of initiating actions to recover unpaid duties and penalties arising from import fraud).

To be sure, as Lincoln argues, Commerce has the duty of conducting a full and fair inquiry into any matter with the potential to impact the calculation of antidumping duties and the duty of developing a full and fair record thereof in accordance with 19 U.S.C. § 1675. *See*, *e.g.*, *Hyundai Electronics Industries Co., Ltd. v. United States*, 28 CIT ___, 342 F.Supp.2d 1141, 1152 (2004); *NEC Corp v. U.S. Dep't of Commerce*, 21 CIT 933, 978 F.Supp. 314 (1997). *Cf. The Torrington Corp. v. United States*, 19 CIT 403, 410, 881 F.Supp. 622, 632 (1995) ("once an importer . . . has indicated on [an anti-reimbursement] certificate that it has not been reimbursed for antidumping duties, it is unnecessary for the Department to conduct an additional inquiry absent a sufficient

allegation of customs fraud"); 19 C.F.R. § 351.402(f) (regarding submission of anti-reimbursement statements). Although those duties concern the agency's proper respect towards the substantive aspects of an antidumping proceeding, the focus of whether to allow rescission of an initiated administrative review must likewise be a full and fair inquiry on the interest in the proceeding.

Before Commerce, Lincoln argued that it and Hongda would be aggrieved by rescission, that import fraud was a problem in the context of antidumping orders, and that Commerce had the duty to continue the review in order to "learn more about these alleged schemes and develop effective administrative techniques to counter such schemes." *See* 68 Fed. Reg. at 46581. These latter points concern Commerce's policy choices on the administration of antidumping law, and it would be inappropriate for a court to substitute judgment for that of Commerce on such matters. *See Suramerica de Aleaciones Laminadas. C.A. v. United States*, 966 F.2d 660, 665 (Fed. Cir. 1992) ("[o]ur duty is not to weigh the wisdom of, or to resolve any struggle between, competing views of the public interest, but rather to respect legitimate policy choices made by the agency in interpreting and applying the statute") (citing *Chevron U.S.A. Inc. v. National Resources Defense Council Inc.*, 467 U.S. 837, 866, 104 S.Ct. 2778, 2793 (1984)). Further, while import fraud involving identity theft is undoubtedly a serious concern, it is not clear the extent to which identity theft would impact dumping margins or whether administrative review is an appropriate forum for rooting out such fraud.[4] The purpose of an administrative or new shipper review of a particular MPE is to examine

---

[4] As an aside, the government represents that the reality of import fraud has sparked consideration of ways to strengthen certifications of factual information in these proceedings. *See, e.g.*, *Certification of Factual Information to Import Administration Proceedings During Antidumping and Counterveiling Duty Proceedings*, 69 Fed. Reg. 56738 (Sep. 22, 2004) (notice of proposed rulemaking).

the MPE's pricing behavior during the period of review. A respondent's own pricing data, not those of identity thieves pursuing an import fraud scheme on the basis of the respondent's good name, are what forms the basis for determining the respondent's dumping margin. Fraudulent imports pursuant to an identity theft scheme would falsely inflate the volume of entries purportedly exported by the scheme's victim, in theory, but any pricing information on the fraudulent imports would normally be irrelevant to the determination on the margin, unless the scheme caused a respondent to alter its own pricing behavior in the U.S. market, which Lincoln does not suggest Hongda suffered.

In its briefs, Lincoln implied that it was aggrieved, through Commerce's decision, because the "schemes *resulted* in antidumping duty liability being imposed on innocent parties, including Hongda and Lincoln" and that "a continuation of the review allowing Hongda to answer the questionnaire (albeit late), *might have affected the dumping margin* by clearly indicating whether Hongda was entitled to a lower margin for legitimate export/import transactions and identifying the counterfeit transactions which would be subject to the 376.67 percent rate." P's Reply at 2, 8 (italics added). Assuming proper consideration would have included confirmation of the extent of the alleged customs fraud, Lincoln therefore argues that Commerce therefore had the duty to continue the administrative review. *See id.* at 6.

This is putting the cart before the horse. It is not a reason to order continuation of the administrative review: the impact upon the antidumping margin of an allegation of import fraud pursuant to a scheme of identity theft would only matter in the event of a final determination upon the margin. At this point, there has been no such determination, so the fraud question is irrelevant to the question of the rate of antidumping duty. Yet, the accurate determination of the margin would

necessarily depend upon Hongda's full participation at the administrative review, as that would be critical to accuracy in the determination as a whole. Hongda and Lincoln eventually represented to Commerce that Hongda wished to participate fully in the review, but by the time they opposed the petitioners' request to withdraw their administrative review request, Hongda had not responded to Commerce's questionnaire or submitted a timely request for administrative review on its own. Granted, Hongda may have been motivated by changed circumstances to take an interest in the administrative review, as was its right, and Commerce at the time might just as well have excused Hongda for the circumstances of its non-responsiveness to that point, but because it was not unreasonable for Commerce to decide to rescind administrative review of Hongda in light of Hongda's prior lack of interest in the proceeding to that point, it was not for the Court to substitute judgment thereon, as discussed in *Huaiyang Hongda*. *See*, *e.g.*, *Consolo*, *supra*, 383 U.S. at 620.

Correlatively, whether Lincoln's appearance was timely or not, its request to continue the administrative review of Hongda necessarily depended upon Commerce's perspective of Hongda's interest in the review, and from that perspective Commerce deemed Lincoln's allegation of import fraud and Lincoln's policy arguments no more compelling to urge continuation of the administrative review than they had been coming from Hongda. The Court is unable to fault such reasoning. On the other hand, the rationale of justifying discontinuance in the face of an expression of interest in its continuance on the ground that Commerce has not committed many resources to an administrative review is very thin reasoning indeed, even if it is consistent with its position on 19 C.F.R. § 351.213(d)(1), *see supra*, note 3. To maintain trust in the fair execution of law by this nation's government, Commerce must, of course, avoid even the appearance of bias or impropriety, to say

nothing of hypocrisy. *Cf.*, *e.g.*, *NKF Engineering, Inc. v. United States*, 805 F.2d 372 (Fed. Cir. 1986) (contracting officer may disqualify a bidder because of an appearance of improper conduct in order to preserve the integrity of the procurement system). Implicating what it considers apparent impropriety, Lincoln directed attention to the fact that Commerce decided to rescind a mere five days after sending a memorandum to ICE regarding the allegation of fraud, and it argues that this circumstance supports the inference of a foregone conclusion.

The government's speedy execution of duty is not an oft-heard complaint. However, at oral argument the Court inquired further into a memorandum on the record, dated June 24, 2003, which reflects that a Commerce analyst explained to counsel for Lincoln over the telephone that with some exceptions Commerce usually grants parties' requests to withdraw requests for review even after the regulatory 90-day period. During the conversation, counsel for Lincoln argued that the deadline for the preliminary review could be extended to afford Hongda the opportunity to respond to Commerce's questionnaire. The analyst's response was to the effect that the deadline for the preliminary results was a little over a month away "so extending Hongda's deadline further for the original response was not especially feasible, given the need for a supplemental questionnaire." The officer then "acknowledged that an extension of the due date for our preliminary results is possible but [Commerce] had not yet made a decision in that regard." PR 94. One interpretation of this is that but for the imminent deadline for the preliminary determination, Commerce might have afforded Hongda the opportunity to respond to the questionnaire/supplemental questionnaire; thus, at oral argument the Court attempted to direct counsel's attention to whether Commerce was effectively sending an improper message concerning the administration of the nation's trade law. The

government's response was to emphasize that enforcement of rules and regulations promotes fairness, as recently affirmed in *Cosco*, *supra. See PAM, S.p.A v. United States*, 29 CIT ___, ___, 395 F.Supp.2d 1337, 1344 (2005) ("compliance with procedures . . . 'creates certainty and predictability for all parties' as to the process of administrative reviews") (quoting *Cosco*, 28 CIT at __, 350 F.Supp.2d at 1302).

After considering the parties' points, the Court is unable to state conclusively that the record evinces impropriety in Commerce's decision to immediately extend the preliminary deadline after rescinding the review with respect to Hongda, or more broadly that there was abuse of discretion on the administrative record with respect to the decision to rescind the administrative review of Hongda. Commerce considered the substance of the import fraud allegation and referred it to the agency statutorily tasked with its investigation. Commerce's consideration was not inappropriate.

II

In its reply brief, Lincoln raises the alternate argument that Commerce should have at least "delay[ed] rescission for a reasonable period while the fraud charges are investigated" because

> postponement of rescission [would have allowed] Commerce to formulate accurate and fair liquidation instructions for Customs to allow the latter to correctly assess antidumping duties. . . . [If] the administrative review of Hongda [is reopened], Commerce (in conjunction with [ICE]) will have time to investigate and distinguish counterfeit from legitimate shipments, and ensure that legitimate shipments are assigned a proper duty rate. At the very least, during the reopened proceedings Commerce should identify which shipment[s] actually came from Hongda and which did not.

P's Reply at 6-7.

The Court does not interpret Lincoln's argument as a plea for a writ of mandamus, which would be available only when performance by the agency has been refused and no meaningful

alternative remedy exists. *See*, *e.g.*, *Nakajima All Co., Ltd. v. United States*, 12 CIT 585, 588, 691 F.Supp. 358, 361 (1988). The government considers that liquidation continues to be enjoined during the pendency of this matter, and while the question of whether Commerce has an obligation to distinguish between the legitimate and the illegitimate Hongda imports on the liquidation instructions under the circumstances presented is doubtless important, the issue is unripe for review.

Nonetheless, the obverse point remains. Once Customs has been apprized of an allegation of import fraud, in this instance based on identity theft, there are reasons why it would have the duty to identify and segregate legitimate and illegitimate Hongda merchandise of its own accord, prior to liquidation and regardless of whether it has been so instructed by Commerce. One is for the purpose of gathering accurate import statistics, which must periodically be reported to Congress by Commerce. *See* 13 U.S.C. § 301 (authorizing collection of all information necessary to further United States commerce and requiring submission of periodic reports on import statistics to Congress); 19 U.S.C. §§ 1484(a)(2)(C) (requiring Customs to insure the accuracy and timeliness of import statistics); 1401(r) (defining "import activity summary statement" as the data or information transmitted electronically to Customs that enables it, *inter alia*, to "collect accurate statistics and determine whether any other applicable requirement of law . . . is met"); 1484(f) (statistical enumeration):

> The Secretary, the Secretary of Commerce, and the United States International Trade Commission shall establish from time to time for statistical purposes an enumeration of articles in such detail as in their judgment may be necessary, comprehending all merchandise imported into the United States and exported from the United States, and shall seek, in conjunction with statistical programs for domestic production and programs for achieving international harmonization of trade statistics, to establish the comparability thereof with such enumeration of articles. *All import entries*

> *and export declarations shall include or have attached thereto an accurate statement* specifying, in terms of such detailed enumeration, the kinds and quantities of all merchandise imported and exported and the value of the total quantity of each kind of article.

*See also Sprague Electric Co. v. United States*, 84 Cust. Ct. 243, 488 F.Supp. 910 (1980) (remanding to the U.S. International Trade Commission after discovery that official import statistics on which the Commission had relied had been incorrect). Another is for the proper monitoring and enforcement of quantitative restrictions in U.S. trade agreement obligations. *See*, *e.g.*, *U.S. Cane Sugar Refiners' Ass'n v. Block*, 3 CIT 196, 544 F.Supp. 883 (1982), *aff'd*, 69 C.C.P.A. 172, 683 F.2d 399 (1982); *Mast Industries, Inc. v. Regan*, 8 CIT 214, 596 F.Supp. 1567 (1984).

At a minimum, Lincoln's allegation of import fraud from identity theft calls into question all representations on the declarations pertaining to the allegedly illegitimate Hongda garlic, which would include the proper identification of their country of origin. Their origin being in doubt, it is difficult to see how Customs could fulfill its mandate of border protection if it fails to distinguish between legitimate and illegitimate Hongda entries at liquidation. *Cf. United States v. Pentax Corp.*, 23 CIT 668, 69 F.Supp.2d 1361 (1999) (finding country of origin material, with "the potential to affect all of Customs' core decisions . . . [and] record-keeping"). Since Hongda obtained its own rate of duty, any commingling of legitimate and illegitimate Hongda entries in Commerce's liquidation instructions does not render it unnecessary for Customs to distinguish between legitimate and illegitimate Hongda entries at liquidation, whether or not the liquidation instructions so state. In other words, regardless of the exactitude of Commerce's liquidation instructions, it would appear that legitimate Hongda merchandise must be assessed the "Hongda" rate of antidumping duty and illegitimate Hongda merchandise the country-wide "all others" rate of antidumping duty, if any be

appropriate, apart from whatever other duties, fines and/or penalties would be appropriate with

respect to the allegedly illegitimate "Hongda" entries of garlic.

### *Conclusion*

For the foregoing reasons, judgment must enter in favor of the defendant.


         /s/  R. Kenton Musgrave
         R. KENTON MUSGRAVE, JUDGE

Dated: December 22, 2005
      New York, New York